2008 ND 57

**John D. ERICKSON, Richard B. Dregseth, Jon A. Ramsey, Plaintiffs and Appellants**

**v.**

**Randy BROWN and Capital Harvest, Inc., Defendants and Appellees.**

**No. 20070044.**

Supreme Court of North Dakota.

March 24, 2008.

Ronald H. McLean (argued) and Timothy G. Richard (on brief), Serkland Law Firm, Fargo, N.D., for plaintiffs and appellants.

David James Eilertson, Brown Corporations, Grand Forks, N.D., for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶1] John D. Erickson, Richard B. Dregseth, and Jon A. Ramsey (collectively

"plaintiffs") appealed from a district court judgment dismissing before trial some of their claims against Randy Brown and Capital Harvest, Inc., and dismissing their remaining claims after a jury verdict in an action to determine the plaintiffs' right to an ownership interest in Capital Harvest. The plaintiffs claim that Erickson and Dregseth left a prior employer to help Brown start Capital Harvest after Brown promised to "give" them an ownership interest in Capital Harvest and Brown thereafter unilaterally required them to "earn" an ownership interest in the company and that Ramsey subsequently left a prior employer to work at Capital Harvest as part of an agreement to "earn" an interest in Capital Harvest. The plaintiffs assert Brown breached his promises and made misrepresentations to them, which prevented them from receiving or earning an ownership interest in Capital Harvest. They argue the district court erred in dismissing most of their claims before trial for failure to state a claim or by summary judgment, the court erred in refusing to instruct the jury on accord and on good faith, and the court erred in refusing to allow the jury to hear evidence about Brown's accounting practices.

[¶ 2] We conclude the district court did not err in refusing to instruct the jury on accord and on good faith, and the court did not abuse its discretion in excluding the plaintiffs' proffered evidence. We further hold that although the court erred in dismissing Capital Harvest under N.D.R.Civ.P. 12(b)(vi) and in granting summary judgment on some of the plaintiffs' claims relating to earning an interest in Capital Harvest, the error was not prejudicial in view of the jury's finding that Brown did not breach his contract with Erickson to earn an interest in Capital Harvest. We also conclude that some of Dregseth's claims relating to whether or not Brown agreed to give him an interest in Capital Harvest raise issues of material fact, and we reverse those claims and remand for further proceedings.

## I

## Facts

[¶ 3] Brown was the sole owner of AGSCO, Inc., a family business in Grand Forks that sold farm seed and chemicals on credit to customers in North Dakota, South Dakota, Minnesota, and Montana. In the late 1990s, Erickson and Dregseth both worked at Bremer Bank in Grand Forks, which provided operating capital to AGSCO, and Erickson provided banking services to Brown and AGSCO. According to Erickson, Brown approached him in 1999 with a plan to create Capital Harvest as a captive finance company for AGSCO. Erickson claimed Brown orally agreed to "give" him a 25 percent interest in Capital Harvest as part of a compensation package to induce him to leave Bremer Bank and help start Capital Harvest. Erickson asserted he and Brown also discussed hiring Dregseth, and Brown authorized Erickson to negotiate a salary and stock ownership agreement with Dregseth, which included giving Dregseth a separate 8 percent ownership interest in Capital Harvest as part of his compensation package to work for Capital Harvest.

[¶ 4] Erickson left his job with Bremer Bank, and he started working for Brown and the yet-to-be formed Capital Harvest on September 13, 1999. According to Erickson, on that date, Brown told him that Brown could not "give" him a 25 percent interest in Capital Harvest, but he could "earn" up to a 25 percent interest under a written schedule that outlined his earned ownership interest based upon Capital Harvest's profits. The written schedule required Erickson to be vice president of Capital Harvest and authorized him to

transfer any portion of his earned interest to other Capital Harvest employees. Erickson claimed Brown also told him that Dregseth's 8 percent interest in Capital Harvest would now come out of Erickson's 25 percent interest.

[¶ 5] Brown incorporated Capital Harvest on October 13, 1999, with himself as the sole shareholder of the corporation. Erickson asserted he did not tell Dregseth about the new arrangement to earn an ownership interest until after Dregseth began working at Capital Harvest on October 18, 1999. Erickson and Dregseth both claimed that because they had quit their jobs at Bremer Bank, they had no leverage to object to the new arrangement and they both decided to work for Capital Harvest under the new arrangement.

[¶ 6] Erickson and Dregseth asserted they subsequently became involved in the management of AGSCO and Brown's affiliated companies, and in 2000, they approached Ramsey, who was then working at Bremer Bank, about managing Capital Harvest for a salary and an opportunity to earn a 4 percent ownership interest in Capital Harvest, which would come out of the 25 percent interest earned by Erickson and Dregseth. The plaintiffs claimed Brown participated in and consented to the agreement with Ramsey.

[¶ 7] Erickson and Dregseth asserted their initial income projections for Capital Harvest were based on Capital Harvest making money on the "spread," which they described as the difference between the rate at which Capital Harvest could borrow money and the rate at which it would loan those funds, and they did not consider charging AGSCO a discount fee, which is a fee charged by credit card companies when they buy credit card debt from a business and assume the risk that the business's debtors will not pay that debt. Erickson and Dregseth claimed they sub-sequently realized Capital Harvest could not make a profit without charging AGSCO a discount fee. In 2000, they suggested AGSCO should pay Capital Harvest a discount fee for financing AGSCO's sales, but Brown declined to authorize a discount fee because he claimed Capital Harvest's financing arrangement with AGSCO customers did not require Capital Harvest assume the risk that those customers would not pay their debt.

[¶ 8] The plaintiffs asserted Capital Harvest's profits were adversely affected by Brown's accounting practices and his refusal to authorize Capital Harvest to charge AGSCO a discount fee. The plaintiffs claimed that, at an October 2002, meeting, Brown said he was not going to honor any of his promises or agreements to the plaintiffs regarding their potential ownership interests in Capital Harvest. Shortly thereafter, Erickson and Ramsey terminated their employment with Capital Harvest, and Dregseth terminated his employment in July 2003. According to Brown, he did not transfer any shares of Capital Harvest to the plaintiffs because Capital Harvest never made the profits required by the written schedule.

[¶ 9] The plaintiffs sued Brown and Capital Harvest for breach of contract, fraud, deceit, promissory estoppel, equitable estoppel, unjust enrichment, and breach of a fiduciary duty. Except for unjust enrichment, the district court dismissed all the plaintiffs' claims against Capital Harvest for failure to state a claim under N.D.R.Civ.P. 12(b)(vi). The court also dismissed Ramsey's breach of contract claims against Brown under N.D.R.Civ.P. 12(b)(vi), concluding that, when Brown contracted with Erickson and Dregseth, Ramsey was not an intended beneficiary of that contract.

[¶ 10] The court thereafter granted summary-judgment dismissal of Ramsey's

fraud claim against Brown and all the plaintiffs' claims against Brown for deceit, promissory estoppel, equitable estoppel, unjust enrichment, and breach of a fiduciary duty. As a result of the court's pretrial rulings, the plaintiffs' claims remaining for trial were Erickson's and Dregseth's claims against Brown for breach of contract and for fraud.

[¶ 11] A jury subsequently returned a special verdict, finding Brown entered into an oral contract with Erickson to give him an ownership interest in Capital Harvest, but Brown and Erickson intended that the written schedule for Erickson to earn an ownership interest in Capital Harvest was a novation. The jury found Brown and Erickson entered into a contract for Erickson to earn an interest in Capital Harvest, Brown did not breach that contract for Erickson to earn an interest in Capital Harvest, and Brown's conduct toward Erickson did not constitute actual fraud. The jury also found Brown did not enter an oral contract with Dregseth to give him an ownership interest in Capital Harvest and Brown also did not enter into a contract with Dregseth for him to earn an ownership interest in Capital Harvest. The court entered a final judgment dismissing all the plaintiffs' claims against Capital Harvest and Brown.

## II

### Claims Against Capital Harvest

[¶ 12] The plaintiffs argue the district court erred in dismissing their claims against Capital Harvest before trial for failure to state a claim and by summary judgment.

[¶ 13] In dismissing all but the plaintiffs' unjust enrichment claim against Capital Harvest under N.D.R.Civ.P. 12(b)(vi), the district court said that under promoter liability, Brown's pre-incorpo-ration agreements could be imputed to Capital Harvest if Capital Harvest ratified those agreements. The court decided, however, that even if Brown agreed to "give" Erickson and Dregseth an ownership interest in Capital Harvest, Brown rescinded that agreement before Capital Harvest was formed and Capital Harvest could not ratify that agreement. The court also said Ramsey did not have a claim based on the alleged agreement to "give" stock, because that agreement was rescinded before Ramsey left Bremer Bank and started working for Capital Harvest. In considering the plaintiffs' claims against Capital Harvest regarding the alleged agreement to "earn" an interest in Capital Harvest, the court said Brown owned all of the shares of Capital Harvest and any earned ownership interest would have to come from him personally. The court decided that because Capital Harvest owned no stock, it could not enter into a contract with the plaintiffs to earn stock and could not be subjected to the burdens that went with that contract. The court thus concluded the plaintiffs failed to state claims against Capital Harvest for breach of contract, fraud, estoppel, deceit, and breach of a fiduciary duty.

[¶ 14] The plaintiffs contend the district court's decision was based on an erroneous interpretation of corporate law, because Capital Harvest could have issued stock directly to Erickson, Dregseth, and Ramsey and could be liable for breach of contract or for equitable claims based on Brown's promise to allow Erickson and Dregseth to earn an interest in Capital Harvest. The plaintiffs argue Brown was personally liable for his pre-incorporation promises, and by accepting the benefits of Brown's promises, Capital Harvest was also liable because Capital Harvest had authorized, but unissued, shares of stock that could have been issued directly to

Erickson, Dregseth, and Ramsey. They also argue that because Brown held all the authorized shares of Capital Harvest, he controlled the corporation and could have amended the articles of incorporation to authorize additional shares that could have been issued directly from Capital Harvest to Erickson, Dregseth, and Ramsey. The plaintiffs also claim Ramsey has valid claims against Capital Harvest, because Erickson, Dregseth, and Brown were acting as agents of Capital Harvest in promising Ramsey an opportunity to earn a 4 percent ownership interest in Capital Harvest.

[¶ 15] In *Ziegelmann v. DaimlerChrysler Corp.*, 2002 ND 134, ¶ 5, 649 N.W.2d 556 (citations omitted), we outlined our standard of review of a dismissal under N.D.R.Civ.P. 12(b)(vi):

> The purpose of a N.D.R.Civ.P. 12(b)(vi) motion is to test the legal sufficiency of the statement of the claim presented in the complaint. In reviewing an appeal from a Rule 12(b) dismissal, we construe the complaint in the light most favorable to the plaintiff, taking as true the well-pleaded allegations in the complaint. Because determinations on the merits are generally preferred to dismissal on the pleadings, Rule 12(b)(vi) motions are viewed with disfavor. Accordingly, a court's scrutiny of the pleadings should be deferential to the plaintiff, and the complaint should not be dismissed unless "it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted." We will affirm a judgment dismissing a complaint for failure to state a claim if we cannot "discern a potential for proof to support it."

[¶ 16] Under N.D.R.Civ.P. 8(a), a pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief and a demand for judgment for the relief the pleader seeks. The purpose of N.D.R.Civ.P. 8(a) is to put a defendant on notice as to the nature of the plaintiff's claim. *Williams v. State*, 405 N.W.2d 615, 621 (N.D.1987). Pleadings that generally indicate the type of claim involved satisfy N.D.R.Civ.P. 8(a). *Williams*, at 621. Although a concise and non-technical complaint is all that is required by N.D.R.Civ.P. 8(a), a complaint nevertheless must be sufficient to inform and notify the adversary and the court of the pleader's claim. *Brakke v. Rudnick*, 409 N.W.2d 326, 332 (N.D.1987).

[¶ 17] To the extent the district court dismissed the plaintiffs' claims against Capital Harvest because the court concluded Brown owned all the stock in Capital Harvest and any stock ownership would have to come from him, we conclude the court erred. A corporation is an artificial person that acts through its agents. *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 11, 705 N.W.2d 836; *Dewey v. Lutz*, 462 N.W.2d 435, 443 (N.D.1990). A corporation that knowingly accepts the benefits of a pre-incorporation contract it might itself make does so subject to the burdens that go with the contract. *Federal Savs. and Loan Ins. Corp. v. Morque*, 372 N.W.2d 872, 876 (N.D.1985). Knowledge of the board of directors, officers, or agents of a corporation is imputed to the corporation. *Bourgois v. Montana–Dakota Utils. Co.*, 466 N.W.2d 813, 817 (N.D.1991); *Morque*, at 876. The knowledge of the promoters of a corporation generally cannot be imputed to the corporation unless the promoters become directors and stockholders of the corporation or are the controlling shareholders. *Morque*, at 876. Fraud and deceit may be imputed from an agent to a principal. *Dewey*, at 443–44 (instructions that prohibited imputation of fraud and deceit from agent of corporation to corporation were erroneous statements of law).

[¶ 18] A corporation's articles of incorporation must state the number of shares a corporation has authority to issue. N.D.C.C. § 10–19.1–10(1)(c). A corporation may retain authorized, but unissued shares. *See* 11 Fletcher Cyclopedia Corporations § 5084 (2003 Rev. Perm. Ed.). A corporation may acquire its own shares and either reissue those shares or hold them. N.D.C.C. §§ 10–19.1–10(3)(n) and 10–19.1–93. A corporation may also amend its articles of incorporation to increase the number of authorized shares and a corporation may then issue those additional shares. *See* N.D.C.C. §§ 10–19.1–10(1)(c) and 10–19.1–17.

[¶ 19] Under our law, both Brown, as the sole shareholder of Capital Harvest, and Capital Harvest, through its sole shareholder, could be ordered to satisfy any necessary transfer of shares of stock. Although the plaintiffs' complaint does not specifically allege promoter liability or that Capital Harvest caused the plaintiffs' harm, the complaint, viewed in the light most favorable to the plaintiffs, alleges that Brown made pre-incorporation promises and representations on behalf of Capital Harvest. Moreover, the complaint, viewed in the light most favorable to the plaintiffs, also alleges that Brown, Erickson, and Dregseth were acting as agents for Capital Harvest after its incorporation. Although the plaintiffs' complaint could have been more specific, we conclude it was sufficient to state claims against Capital Harvest under agency and promoter principles and the district court erred in dismissing the plaintiffs' claims against Capital Harvest because the court decided any stock ownership would have to come from Brown.

[¶ 20] We further conclude, however, that any liability imposed upon Capital Harvest is imputed from Brown's alleged promises or misrepresentations and may be imposed directly against Brown by requiring him to transfer shares of stock of Capital Harvest, if necessary. *See Dewey,* 462 N.W.2d at 443–44 (jury's failure to follow erroneous instruction that prohibited imputation of fraud and deceit from agent to principal was harmless error where jury nevertheless awarded actual and punitive damages against principal). " 'Nonprejudicial mistakes by the district court constitute harmless error and are not grounds for reversal.' " *Olander Contracting Co. v. Gail Wachter Invs.,* 2002 ND 65, ¶ 26, 643 N.W.2d 29 (quoting *Peters–Riemers v. Riemers,* 2001 ND 62, ¶ 10, 624 N.W.2d 83). On this record, we conclude the plaintiffs have not established they were prejudiced by the dismissal of their claims against Capital Harvest under N.D.R.Civ.P. 12(b)(vi). Moreover, for the same reason, we conclude the plaintiffs' unjust enrichment claims against Capital Harvest, which were dismissed by summary judgment with their unjust enrichment claims against Brown, are dependent on Brown's ultimate liability for his promises or representations and are governed by the same analysis.

### III

### Claims Against Brown

[¶ 21] The plaintiffs' argue the district court erred in granting summary judgment dismissal of Dregseth's and Ramsey's deceit and equitable claims against Brown.

[¶ 22] Under N.D.R.Civ.P. 56, summary judgment is a procedural device for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. *Hasper v. Center Mut. Ins. Co.,* 2006 ND 220, ¶ 5,

723 N.W.2d 409. The party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. *Trinity Hosps. v. Mattson,* 2006 ND 231, ¶ 10, 723 N.W.2d 684. A district court's decision on a motion for summary judgment is a question of law that we review de novo on the record. *Id.* In determining whether summary judgment was appropriately granted, we view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. *Hasper,* at ¶ 5.

A

Deceit

[¶ 23] "One who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk is liable for any damage which that person thereby suffers." N.D.C.C. § 9–10–03. As used in N.D.C.C. § 9–10–03, "deceit" means:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

4. A promise made without any intention of performing.

N.D.C.C. § 9–10–02.

[¶ 24] This Court has recognized that under the statutory definitions for deceit and fraud, the same conduct, a promise made without any intention of performing, may constitute both deceit and fraud. *Delzer v. United Bank,* 527 N.W.2d 650, 653 (N.D.1995) (*Delzer I*) (*comparing* N.D.C.C. § 9–03–08(4) *with* § 9–10–02(4)). Under those statutes, we have said that although the same conduct can constitute both deceit and fraud and those terms are often used interchangeably, fraud under N.D.C.C. § 9–03–08 applies to parties to a contract, while deceit under N.D.C.C. § 9–10–02 applies where there is no contract between the parties. *WFND, LLC v. Fargo Marc, LLC,* 2007 ND 67, ¶ 25, 730 N.W.2d 841; *Grandbois and Grandbois, Inc. v. City of Watford City,* 2004 ND 162, ¶ 19, 685 N.W.2d 129; *Delzer v. United Bank,* 1997 ND 3, ¶ 5 n. 2, 559 N.W.2d 531 (*Delzer II*); *Delzer I,* at 653; *Dvorak v. American Family Mut. Ins. Co.,* 508 N.W.2d 329, 332 (N.D.1993); *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470, 474 (N.D.1991); *Bourgois,* 466 N.W.2d at 818 n. 5; *Dewey,* 462 N.W.2d at 439; *West v. Carlson,* 454 N.W.2d 307, 310 n. 1 (N.D. 1990); *Olson v. Fraase,* 421 N.W.2d 820, 827 n. 3 (N.D.1988); *Ostlund Chem. Co. v. Norwest Bank,* 417 N.W.2d 833, 835–36 (N.D.1988); *Hellman v. Thiele,* 413 N.W.2d 321, 326 (N.D.1987).

[¶ 25] In *Delzer I,* 527 N.W.2d at 653, we explained:

Under Chapter 9–03, N.D.C.C., "[a] promise made without any intention of performing it" and with intent to deceive or to induce another to enter into a contract is "actual fraud" for purposes of nullifying apparent free consent to the contract. N.D.C.C. §§ 9–03–01, 9–03–03, and 9–03–08(4). If there is a contract between the parties and a party's apparent free consent to the contract is obtained by fraud, N.D.C.C. § 9–03–02 authorizes the defrauded party to rescind the contract in the manner prescribed by Chapter 9–09, N.D.C.C. The defrauded party may also affirm the

contract and recover damages. *Schaff v. Kennelly*, 61 N.W.2d 538 (N.D.1953); *Beare v. Wright*, 14 N.D. 26, 103 N.W. 632 (1905); *see* Restatement (Second) of Torts § 549 (1977); Calamari and Perillo, Contracts § 9–23 (3rd ed.1987); Dobbs, Remedies § 9.1 et seq. (1973); Prosser and Keeton on Torts § 110 (5th ed.1984); 37 Am.Jur.2d, *Fraud and Deceit* § 327 (1968).

Under Chapter 9–10, N.D.C.C., if there is no contract between the parties, "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers," and "deceit" is defined as "[a] promise made without any intention of performing." N.D.C.C. §§ 9–10–01, 9–10–02(4), and 9–10–03. Under those statutes, a promise made without any intention of performing it which does not meet the requirements of a contract between the parties may nevertheless satisfy the requirements of deceit, and the victim of that deceit may recover for any damage suffered.

. . . .

*Pioneer Fuels [, Inc. v. Montana–Dakota Utils. Co.*, 474 N.W.2d 706 (N.D. 1991)] stands for the principle that, where there is a breach of contract, there must be some additional, independent facts not connected to the manner of the breach of contract to support tort and exemplary damage claims. *See* 22 Am.Jur.2d, *Damages* § 752 (1988) (exemplary damages ordinarily not recoverable in action for breach of contract, unless breach amounts to an independent, willful tort). However, when the parties' actions do not meet the requirements for a contract, *Pioneer Fuels* does not preclude tort recovery for deceit, if the elements of deceit under Chapter 9–10, N.D.C.C., are established. *See Dewey v. Lutz, supra* (even if some defen-

dants were not parties to contract, there was sufficient evidence to support jury's alternative findings of deceit by those defendants); *State Bank of Kenmare v. Lindberg*, 471 N.W.2d 470 (N.D.1991) (allegations of extra-contractual statements by lender which induced borrower to alter position sounds in tort).

Here, the jury found there was no oral contract to lend Delzers an additional $150,000, but that United knowingly deceived the Delzers. *Pioneer Fuels* is not controlling because the jury found that the elements of an oral contract to loan an additional $150,000 had not been met, but that United's actions regarding the alleged additional $150,000 loan satisfied the requirements for deceit. When there is no contract between the parties, *Pioneer Fuels* and our statutory provisions for deceit do not preclude tort recovery if the separate elements of deceit are established. *See Dewey v. Lutz, supra.* The problem present in *Pioneer Fuels*—the only evidence presented to support the tort claim was evidence of the breach of a contract—is not present here.

▆▆ [¶ 26] Allegations of fraud and deceit generally raise questions of fact which must be proved by clear and convincing evidence. *WFND*, 2007 ND 67, ¶ 25, 730 N.W.2d 841; *Wagner v. Wagner*, 2000 ND 132, ¶ 12, 612 N.W.2d 555; *State Bank of Kenmare*, 471 N.W.2d at 474.

▆▆ [¶ 27] The separate concurrence and dissent recognizes neither party has asked us to address the confusion between fraud and deceit. Rather, the appellants' argument about deceit states the district court "correctly not[ed] the technical distinction that fraud is the proper claim where a contract exists between the parties, whereas deceit is the proper claim where there is no contract." Our caselaw

has consistently recognized "[t]he 'law of the case' doctrine and the scope of the parties' appeal define the parameters or our review." *Hopfauf v. Hieb,* 2006 ND 72, ¶ 11 n. 2, 712 N.W.2d 333 (citing *Tom Beuchler Constr. v. City of Williston,* 413 N.W.2d 336, 339 (N.D.1987)). *E.g. State v. Duchene,* 2007 ND 31, ¶ 10, 727 N.W.2d 769 ("Issues not briefed by an appellant are deemed abandoned, and thereby become the law of the case and will not be considered on appeal"); *Estate of Murphy v. Maus,* 2001 ND 87, ¶ 13 n. 1, 626 N.W.2d 281 (same). The analysis of fraud and deceit in the separate concurrence and dissent represents an argument for clarifying or overruling caselaw interpreting our statutes for fraud and deceit. The adversarial process necessitates and benefits by thorough development of arguments for a change in existing law. On this record, the law of the case and the posture of the issues raised by the parties in this appeal militate against any such change in the law in this proceeding.

### 1

### Ramsey

[¶ 28] In granting Brown summary judgment on Ramsey's deceit claim, the district court said there were no allegations that Brown made any willful misrepresentations to Ramsey. The plaintiffs argue Brown failed to disclose to Ramsey that he had no intention of transferring any ownership interest in Capital Harvest and Brown's failure to disclose that material fact constituted deceit. Brown counters that the district court properly dismissed Ramsey's deceit claim because the plaintiffs' complaint does not allege Brown deceived Ramsey; rather, the complaint alleges Brown made promises or misrepresentations to Erickson and Dregseth that they would receive an interest in Capital Harvest. Brown claims Ramsey was not affected by those alleged promises or misrepresentations because Ramsey had not yet started working for Capital Harvest. Brown also claims that as Capital Harvest's banker, Ramsey knew Capital Harvest was not charging AGSCO a discount fee when Ramsey agreed to work for Capital Harvest and the issue of whether Brown breached a contract by failing to authorize a discount fee was tried to the jury, which rejected the very means by which the plaintiffs attempted to show that Brown never intended to transfer an ownership interest in Capital Harvest. Brown thus claims Ramsey was not prejudiced by the dismissal of his deceit claim.

[¶ 29] Deceit can be based on promises made without any intention of performing. N.D.C.C. § 9-10-02(4). In *Dewey,* 462 N.W.2d at 440-41, we said two parties who were involved with a buyer in a real estate sale, but were not parties to the contract, could be liable for failing to fully disclose important facts regarding their involvement in the transaction. In *Delzer I,* 527 N.W.2d at 653-54, we said that when the parties' actions did not meet the requirements for a contract, our statutory provisions for deceit did not preclude recovery if the separate elements of deceit were established.

[¶ 30] Here, the plaintiffs claimed Brown was aware of the promise for Ramsey to earn a 4 percent ownership interest in Capital Harvest and Brown failed to disclose to Ramsey that he was not going to allow anyone to earn an interest in Capital Harvest. Viewing the evidence in the light most favorable to Ramsey, there is some evidence to support Ramsey's deceit claim. However, the jury decided Brown did not breach his contract with Erickson to earn an ownership interest in Capital Harvest. Ramsey's argument is not based on the plaintiffs' claim about an agreement to give an ownership

interest in Capital Harvest. Rather, his argument about deceit is based on Erickson's contract with Brown to earn an interest in Capital Harvest and Ramsey's claim is derived from Erickson's claim that Brown breached the contract for Erickson to earn an interest in Capital Harvest. Although deceit is ordinarily a question of fact, it must be established by clear and convincing evidence. *WFND*, 2007 ND 67, ¶ 25, 730 N.W.2d 841. In analyzing the propriety of summary judgment in a fraud or deceit case, it is appropriate to consider the quantum of proof necessary to support liability. *See Smith v. Land O'Lakes, Inc.*, 1998 ND 219, ¶ 12, 587 N.W.2d 173. On this record and the jury's ultimate finding that Brown did not breach his contract with Erickson to earn an interest in Capital Harvest, we conclude Ramsey has not established he was prejudiced by the summary judgment dismissal of his deceit claim. *See Olander Contracting Co.*, 2002 ND 65, ¶ 26, 643 N.W.2d 29 (nonprejudicial mistakes constitute harmless error and are not grounds for reversal).

### 2

### Dregseth

[¶ 31] In granting summary judgment on Dregseth's deceit claim against Brown, the district court said deceit was only applicable when there was no contract and the plaintiffs and Brown both claimed a contract existed between Brown and Dregseth but disputed the terms of the contract and whether Brown fraudulently induced Dregseth to enter the contract. The plaintiffs argue the district court erred in dismissing Dregseth's deceit claim against Brown because the jury ultimately found Dregseth had no contract with Brown regarding ownership of Capital Harvest and deceit was therefore a proper claim. Brown responds that Dregseth's deceit claim was properly dismissed,

because the alleged deceit was a promise to induce him to enter into a contract to work for Capital Harvest, which constitutes an action for fraud. Brown argues that although the jury decided there was no contract to either give shares to Dregseth or for Dregseth to earn an interest in Capital Harvest, the jury did not decide Brown and Dregseth had no contract. Brown asserts there was a contract for Dregseth to work for a salary. Brown also asserts the basis for Erickson's fraud claim against Brown was identical to Dregseth's deceit claim and it would be a "stretch to suggest that Brown did not lie to Erickson [under the jury's determination that Brown did not defraud Erickson] yet lied to Dregseth." Brown further argues the district court correctly understood that Dregseth's allegation was an action for fraud and because the jury found there was no contract promising Dregseth an interest in Capital Harvest, the basis for the fraud and any deceit was absent.

[¶ 32] Dregseth's deceit claims stem from two alleged promises—the initial promise to give him an ownership interest in Capital Harvest and the second promise for him to earn an interest in Capital Harvest, which was derived from Erickson's earned interest. For reasons similar to our analysis of Ramsey's deceit claim and to the extent Dregseth's deceit claim also stems from the promise to earn an interest in Capital Harvest, we conclude Dregseth has not established he was prejudiced by the summary judgment dismissal of his deceit claim because the jury ultimately decided Brown did not breach the contract with Erickson to earn an interest in Capital Harvest.

[¶ 33] To the extent Dregseth's deceit claim stems from Brown's alleged promise to give him an interest in Capital Harvest as part of his compensation pack-

age, the analysis is different. The jury's determination that there was no enforceable contract between Brown and Dregseth to give Dregseth an interest in Capital Harvest does not mean that Brown did not make misrepresentations that resulted in Dregseth leaving Bremer Bank to work for Capital Harvest. *See Delzer I,* 527 N.W.2d at 653–54 (under deceit statutes, a promise made without any intention of performing it which does not meet the requirements of a contract between the parties may nevertheless satisfy the requirements of deceit). Although the jury found no enforceable contract had been breached between Brown and Dregseth regarding ownership of Capital Harvest, the jury did not find that no misrepresentations were made and Dregseth's deceit claim was dismissed before trial. Moreover, the jury's rejection of Erickson's fraud claim is not dispositive of Dregseth's deceit claim because the jury instructions for the fraud claim required a contract and the jury decided Brown did not enter into a contract with Dregseth to give him an ownership interest in Capital Harvest. Viewing the evidence in the light most favorable to Dregseth, we conclude there are disputed issues of material fact about his deceit claim and the district court improperly dismissed that claim by summary judgment.

B

Equitable Relief

[¶ 34] The plaintiffs argue the district court erred in granting summary judgment dismissal of Ramsey's and Dregseth's claims for equitable relief.

1

Equitable Estoppel

[¶ 35] The plaintiffs argue the district court erred in granting summary judgment dismissal of Ramsey's claim for equitable estoppel. A plaintiff alleging equitable estoppel must show: (1) the defendant engaged in conduct that amounts to a false representation or concealment of a material fact or conduct that is calculated to convey the impression that the facts are other than those which the defendant subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or will influence, the plaintiff; and (3) knowledge, actual, or constructive, of the real facts by the defendant. *Dalan v. Paracelsus Healthcare Corp.,* 2002 ND 46, ¶ 19, 640 N.W.2d 726.

[¶ 36] In granting summary judgment dismissal of Ramsey's claim for equitable estoppel, the district court said it was undisputed that Brown made no promises to Ramsey except for a signing bonus and Brown fulfilled that promise. The plaintiffs argue Brown knew Ramsey was accepting employment at Capital Harvest because of the opportunity to earn a 4 percent ownership interest in the company and Brown's conduct toward Ramsey amounted to a concealment of the fact that Brown had no intention of transferring an ownership interest in Capital Harvest to Erickson, which could then be transferred to Ramsey. The plaintiffs claim Brown had a duty to disclose to Ramsey that he would not be able to earn an ownership interest because Brown had no intent to transfer ownership to anyone. The plaintiffs argue that, viewing the evidence in Ramsey's favor, a question of fact remained about whether Brown concealed material information from Ramsey regarding the potential ownership in Capital Harvest knowing that Ramsey was leaving his banking career based on that concealed information.

[¶ 37] For the same reasons as our disposition of Ramsey's deceit claim, however, we conclude that, in view of the jury's

finding that Brown did not breach the contract for Erickson to earn an ownership interest in Capital Harvest, Ramsey has not established he was prejudiced by summary judgment dismissal of his equitable estoppel claim.

### 2

### Other Equitable Claims

[¶ 38] In granting summary judgment dismissal of the plaintiffs' unjust enrichment claims against Brown and Capital Harvest, the district court decided all three plaintiffs had adequate remedies at law that precluded the granting of equitable relief, because all three plaintiffs had enforceable employment contracts with either Brown or Capital Harvest. In dismissing Ramsey's and Dregseth's other equitable claims by summary judgment, the district court also said Ramsey and Dregseth had adequate remedies at law that precluded equitable relief.

[ 39] A party with an adequate remedy at law generally is not entitled to an equitable remedy. *See Lochthowe v. C.F. Peterson Estate*, 2005 ND 40, ¶ 9, 692 N.W.2d 120; *Matter of Estate of Hill*, 492 N.W.2d 288, 295–96 (N.D.1992); *D.C. Trautman Co. v. Fargo Excavating Co., Inc.*, 380 N.W.2d 644, 645–46 (N.D.1986). Here, the district court's analysis of the plaintiffs' other equitable claims was based solely on the court's conclusion that they had an adequate remedy at law.

[¶ 40] The plaintiffs argue Ramsey had no legal remedy to enforce the promise of ownership after the district court dismissed his contract claim under N.D.R.Civ.P. 12(b)(vi), and Dregseth was entitled to assert an alternate claim for unjust enrichment because the jury found he had no contract to enforce his claim for ownership of Capital Harvest. The plaintiffs also argue that in view of the ultimate disposition of their legal claims, Ramsey

and Dregseth had no legal remedy and were entitled to assert their other equitable claims against Brown.

[¶ 41] Ramsey's equitable claims are predicated on the agreement to earn an interest in Capital Harvest. For the same reasons as our disposition of Ramsey's deceit and equitable estoppel claims, we conclude Ramsey has not established he was prejudiced by summary judgment dismissal of his other equitable claims. To the extent Dregseth's other equitable claims are based on the alleged promise to earn an ownership interest in Capital Harvest, we also conclude he has not established he was prejudiced by the summary judgment dismissal of those claims.

[31] ██ 42] To the extent Dregseth's other equitable claims against Brown are based on the alleged promise to give him an interest in Capital Harvest as part of his compensation package to work at Capital Harvest, we conclude the district court erred in basing its decision solely on its conclusion that Dregseth had adequate remedies at law and dismissing those claims by summary judgment before disposition of his legal claims.

[32] In *Landers v. Goetz*, 264 N.W.2d 459, 463 (N.D.1978), this Court explained the procedure for resolving legal and equitable claims in the same case:

It is the general rule that legal issues entitling a party to a jury trial should be tried to the jury prior to the disposition of the equitable issues triable to the court. Whenever the issues are so interrelated that a decision in the nonjury portion might affect the decision of the jury portion, the jury portion is to be tried first, since otherwise the party entitled to the jury trial would be deprived of part or all of his right to a jury trial.

*See also Ask, Inc. v. Wegerle*, 286 N.W.2d 290, 295–96 (N.D.1979).

[¶ 44] Here, during the hearing on the motion for summary judgment, the plaintiffs asked the district court to follow that procedure. However, the district court granted Brown summary judgment. We remand to the district court for consideration of Dregseth's equitable claims relating to the alleged agreement to give him an interest in Capital Harvest in accordance with *Landers* and *Ask*.

## IV

## Jury Instructions

[¶ 45] The plaintiffs argue the district court erred in not instructing the jury regarding accord and the duty of good faith.

[¶ 46] Jury instructions must fairly inform the jury of the applicable law. *Crowston v. Goodyear Tire & Rubber Co.,* 521 N.W.2d 401, 413 (N.D.1994). On appeal, we review jury instructions as a whole and if they correctly advise the jury of the law, they are sufficient although parts of the instructions, standing alone, may be erroneous and insufficient. *Id.*

### A

### Accord

[¶ 47] The plaintiffs argue they were entitled to a jury instruction defining accord under N.D.C.C. § 9–13–04, which provides that an accord is "an agreement to accept in extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled." The plaintiffs claim the evidence at trial supported their requested jury instruction on accord:

> An accord is an agreement to accept as extinction of an obligation something different from or less than that to which the person agreeing to accept is entitled. With an accord, the parties intend that

the original contract obligation remains viable but that it is suspended pending performance by the parties of the modification. If one party breaches the modification, the other party may sue on the original contract or on the modification.

[¶ 48] The jury found that Brown entered into a contract with Erickson to "give" Erickson an ownership interest in Capital Harvest and that Brown and Erickson intended the agreement to "earn" an interest in Capital Harvest to be a novation. The plaintiffs argue that based on the statutory definition of accord and the evidence at trial, the jury could have decided the second agreement between Erickson and Brown was an accord rather than a novation. They claim the district court's failure to give an instruction on accord prejudiced Erickson, because if the jury had found an accord rather than a novation, the original agreement would not have been extinguished, Erickson would have been entitled to enforce the original agreement if Brown breached the conditions of the accord, and the jury could have found that Brown breached the agreement to give Erickson a 25 percent interest in Capital Harvest.

[¶ 49] In *Herb Hill Ins., Inc. v. Radtke,* 380 N.W.2d 651, 652 n. 1 (N.D. 1986) (quoting *Sergeant v. Leonard,* 312 N.W.2d 541, 545–46 (Iowa 1981)), this Court explained the difference between an accord and a novation:

> Two principal legal situations may arise when a contract obligation is modified, an accord or a substituted contract [novation]. With an accord the parties intend that the original contract obligation remains viable but that it is suspended pending performance by the debtor of the modification. If the debtor breaches the modification, the creditor may sue on the original contract or on the modification. . . .

With a substituted contract [novation] the parties intend to terminate the original contract obligation and to substitute the modification. If the debtor breaches the modification, the creditor may sue only on that agreement.

[¶ 50] Under that framework, the issue is whether Brown and Erickson intended to suspend the agreement to give Erickson 25 percent of Capital Harvest pending performance of the agreement to earn an ownership interest in Capital Harvest, or whether they intended to nullify the agreement to give Erickson 25 percent of Capital Harvest and substitute the agreement to earn. The plaintiffs have cited no evidence tending to show the parties intended to suspend their agreement to give an ownership interest in Capital Harvest pending performance of any agreement to earn an interest in Capital Harvest. Rather, the evidence in this record shows only a substituted agreement, and on this record, we conclude the plaintiffs were not entitled to an instruction on accord.

## B

## Good Faith

[¶ 51] The plaintiffs argue N.D.C.C. § 41–08–03 of the Uniform Commercial Code ("U.C.C.") defines a security as "a share or similar equity interest issued by a corporation," which imposes an obligation of good faith under the U.C.C. on every contract involving securities. They claim they were entitled to their requested instruction on good faith:

In every contract for the transfer of stock in a corporation, there is an implied duty of good faith. "Good faith" means honesty in fact and the observance of reasonable commercial standards of fair dealing.

The plaintiffs argue the district court refused to give their requested instruction based on its erroneous conclusion that the U.C.C. did not apply to Brown's agreement with Erickson and Dregseth to transfer shares of stock in Capital Harvest. They claim the district court's failure to give their requested instruction on good faith prejudiced Erickson's breach of contract claim, because they introduced expert testimony that discount fees are customary and necessary for a finance company to show a profit and one of their main arguments was that Brown breached the agreement to "earn" stock in Capital Harvest by intentionally refusing to allow Capital Harvest to charge AGSCO a discount fee to compensate Capital Harvest for financing millions of dollars of sales of AGSCO products. They claim an instruction on good faith could have allowed the jury to find Brown breached the agreement with Erickson by not observing reasonable commercial standards of fair dealing.

[¶ 52] The U.C.C. generally applies to simplify, clarify, and modernize the law governing commercial transactions. N.D.C.C. § 41–01–02(2)(a). The U.C.C. has specific chapters dealing with sales of goods, leases, negotiable instruments, bank deposits and collections, funds transfers, letters of credit, documents of title, investment securities, and secured transactions. N.D.C.C. tit. 41. Chapter 41–08, N.D.C.C., generally provides commercial rules for investment securities and the law governing securities or transactions in securities. Although the definition of security in N.D.C.C. ch. 41–08 is broad enough to include shares in a closely-held corporation in the commercial context, this case is about an employment contract and the plaintiffs have cited no authority extending any of the U.C.C.'s good faith requirements to employment contracts. This Court has consistently rejected arguments to inject an implied covenant of good faith and fair dealing into the employment context. *E.g. Jose v. Norwest Bank*, 1999 ND

175, ¶ 14, 599 N.W.2d 293. We reject the plaintiffs' argument that good faith and fair dealing applies to what is essentially an employment contract. We conclude the district court did not err in denying the plaintiffs' request for a good faith instruction.

## V

### Admissibility of Evidence

[¶ 53] The plaintiffs argue the district court erred in not allowing the jury to hear evidence about Brown's accounting practices. The plaintiffs argue the court erred in excluding evidence of Brown's practice of using merchandise stored at AGSCO as an accounting practice to artificially inflate AGSCO's sales. They claim they were precluded from offering several exhibits and additional testimony on this issue and the court then allowed Brown to testify regarding AGSCO's sales figures, which they contend are inaccurate and misleading without being adjusted to account for Brown's improper accounting practices. They argue the evidence was highly relevant to Brown's credibility and their assertion that Brown intentionally prevented Capital Harvest from charging a discount fee and showing a profit, which prevented them from earning their ownership interest in Capital Harvest. They claim the evidence was directly relevant to establish Brown was willing to use improper business practices to further his interest, just as he did in not authorizing a discount fee to prevent the plaintiffs from earning their interest in Capital Harvest. The plaintiffs argue the court abused its discretion in excluding their proffered evidence under N.D.R.Ev. 403.

[¶ 54] In *Williston Farm Equip. v. Steiger Tractor, Inc.*, 504 N.W.2d 545, 548–49 (N.D.1993) (citations omitted), we summarized our standard for reviewing issues involving the admission of evidence under N.D.R.Ev. 403:

> Relevant evidence means evidence that would reasonably and actually tend to prove or disprove any fact that is of consequence to the determination of an action. Relevant evidence is generally admissible. A trial court has discretion to determine whether evidence is relevant, and its decision will not be reversed on appeal absent an abuse of discretion. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." A trial court has discretion to balance the probative value of the proffered evidence against the dangers enumerated in Rule 403, N.D.R.Ev., and we also review that determination under the abuse-of-discretion standard.

[¶ 55] A district court abuses its discretion in evidentiary rulings if it acts arbitrarily, capriciously, or unreasonably, or if it misinterprets or misapplies the law. *State v. Manning*, 2006 ND 125, ¶ 7, 716 N.W.2d 466. On this record, we are not persuaded the district court's decision to exclude the plaintiffs' proffered evidence was arbitrary, capricious, or unreasonable, or a misapplication of the law. We therefore conclude the district court did not abuse its discretion in refusing to admit that evidence.

## VI

[¶ 56] For reasons stated herein, we affirm in part, reverse in part, and remand for further proceedings on Dregseth's deceit and equitable claims regarding the alleged promise to give him an ownership interest in Capital Harvest.

[¶ 57] EVERETT NELS OLSON, S.J., and DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., concur.

[¶ 58] The Honorable EVERETT NELS OLSON, S.J., sitting in place of KAPSNER, J., disqualified.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 59] I concur with that part of the majority opinion remanding the case for consideration of Dregseth's deceit and equitable claims. I also concur with Parts IV and V of the majority opinion regarding jury instructions and admissibility of evidence. I respectfully dissent from those portions of the majority opinion affirming dismissal of Ramsey's deceit and equitable claims and affirming dismissal of the action against Capital Harvest.

## FRAUD OR DECEIT

[¶ 60] Many of the problems in this case arise because of a legal error that treats fraud and deceit as the same. They are not. Nor are these claims "substantially identical." Unfortunately, the error of law has been developing over time and now appears to have adversely affected this case.

[¶ 61] This case proceeded below on the mistaken notion fraud and deceit claims are identical means of recovering money damages save the requirement that fraud applies to parties to a contract and deceit does not. I agree with the majority that, absent an objection on appeal, we must accept this posture as law of the case. *See* Majority opinion at ¶ 27. However, fraud and deceit are very different legal theories with very different results in litigation. I therefore write separately to invite an appeal by a party who has not acquiesced in treating fraud and deceit as the same, so that this Court can have a vehicle for restoring some clarity and certainty to this area of the law.

[¶ 62] Fraud is a claim arising in contract and relates to the lack of consent. One asserting fraud seeks to avoid a contract by showing consent is lacking due to misrepresentation. Fraud, and its remedy of rescission, requires placement of the parties back to their original positions. In fraud, a plaintiff may sue to recover what he has parted with or for its value. Conversely, deceit sounds in tort and allows recovery of damages upon proof of an affirmative representation or suppression of material facts. A deceit claim can be brought within a contractual relationship by a person who ratifies a contract after learning of the fraud of another or can be brought by parties who have no contractual relationship. In deceit, a plaintiff may sue to recover any damages proximately caused by reliance on the misrepresentation.

[¶ 63] "In this state there is no common law in any case in which the law is declared by the code." N.D.C.C. § 1-01-06. Because the Legislature has spoken through the Code, actions for fraud and deceit are controlled by the statutory distinctions between the claims. Understanding and appreciating the differences between fraud and deceit starts with consideration of the applicable statutes, the statutory framework, and the structure of the Century Code.

[¶ 64] As to fraud, the Code provides:

### Title 9: CONTRACTS AND OBLIGATIONS
### CHAPTER 9-01: GENERAL PROVISIONS

Section 9-01-02. Requisites of contract. It is essential to the existence of a contract that there should be:

1. Parties capable of contracting;

2. The *consent* of the parties;

3. A lawful object; and

4. Sufficient cause or consideration.

(Emphasis added.)

### CHAPTER 9-03: CONSENT

Section 9-03-01. Requisites of consent. The *consent* of the parties to a contract must be:

1. Free;

2. Mutual; and

3. Communicated by each to the other.

(Emphasis added.)

Section 9-03-02. Absence of free consent—Effect. *A consent which is not free is not absolutely void, but may be rescinded by the parties in the manner prescribed by chapter 9-09.*

(Emphasis added.)

Section 9-03-03. What renders apparent consent not free. An apparent consent is not real or free when obtained through:

1. Duress;

2. Menace;

3. *Fraud;*

4. Undue influence; or

5. Mistake.

(Emphasis added.)

Section 9-03-04. When consent deemed voidable. Consent is deemed to have been obtained through duress, menace, *fraud,* undue influence, or mistake only when it would not have been given except for one or more of them.

(Emphasis added.)

Section 9-03-07. Fraud classified. Fraud is either actual or constructive.

Section 9-03-08. Actual fraud defined. Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with the party's connivance, with intent to deceive another party thereto or to induce the other party to enter into the contract:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though that person believes it to be true;

3. The suppression of that which is true by one having knowledge or belief of the fact;

4. A promise made without any intention of performing it; or

5. Any other act fitted to deceive.

Section 9-03-09. Constructive fraud defined. Constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under that person, by misleading another to the other's prejudice or to the prejudice of anyone claiming under the other; or

2. In any such act or omission as the law specially declares to be fraudulent without respect to actual fraud.

Section 9-03-24. Ratification as consent. A contract which is voidable solely for want of due consent may be ratified by a subsequent consent.

Section 9-03-25. Acceptance of benefit equivalent to consent. A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting.

### CHAPTER 9-09: EXTINCTION, RESCISSION, ALTERATION, AND CANCELLATION

Section 9-09-01. Extinction of contracts. A contract may be extinguished

in like manner with any other obligation and also by rescission, alteration, or cancellation to the extent and in the manner provided by this title.

Section 9–09–02. Rescission—When permitted. A party to a contract may rescind the same in the following cases only:

1. If the consent of the party rescinding or of any party jointly contracting with the party rescinding was given by mistake or obtained through duress, menace, *fraud,* or undue influence exercised by or with the connivance of the party as to whom the party rescinding rescinds or of any other party to the contract jointly interested with such party; . . .

(Emphasis added.)

[¶ 65] Pursuant to these sections, fraud relates to whether consent to a contract was freely given. N.D.C.C. §§ 9–03–01 and 9–03–03. Where consent is not free, the Legislature has provided rescission as the remedy after prompt restoration of everything of value. N.D.C.C. § 9–03–02.

[¶ 66] Overt affirmation of the contract, failure to seasonably restore to the other party everything of value, or conduct inconsistent with rescission is an election to ratify the contract. N.D.C.C. §§ 9–03–24 and 9–03–25. Upon ratification, the opportunity to avoid the contract is waived, an action for fraud is no longer available, and a beguiled party seeking redress must proceed in tort to recover for deceit. Upon ratification of a contract where fraud previously prevented full or free consent, or where there is an actionable misrepresentation but no contract, the following portions of the Code apply:

## CHAPTER 9–10: OBLIGATIONS IMPOSED BY LAW

Section 9–10–02. Deceit—Definition. A deceit within the meaning of section 9–10–03 is:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true;

2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

4. A promise made without any intention of performing.

Section 9–10–03. Damages for deceit. One who willfully deceives another with intent to induce that person to alter that person's position to that person's injury or risk is liable for any damage which that person thereby suffers.

[¶ 67] Our law governing actions for fraud or deceit has been codified since prior to statehood. *See Bourgois v. Montana–Dakota Utilities Co.,* 466 N.W.2d 813, 817–18 (N.D.1991). Soon thereafter, this Court was faced with consideration of the difference between the two claims. In *Beare v. Wright,* 14 N.D. 26, 103 N.W. 632 (1905), this Court stated:

"And fraud, actual or constructive, renders a contract voidable for the same reason that mistake, undue influence, duress, etc., have the same effect. Sections 3941, 3942, Rev.Codes 1899 [now N.D.C.C. §§ 9–10–02 and 9–10–03], merely declare that actual fraud is a tort for which the guilty party is liable to the injured party if any damage has been suffered by the latter. In other words, actual fraud, with damage, is a good cause of action, and constitutes actionable deceit."

*Beare,* 14 N.D. at 32, 103 N.W. at 634.

[¶ 68] In *Sonnesyn v. Akin,* 14 N.D. 248, 104 N.W. 1026 (1905), this Court fur-

ther explained the fraud-deceit distinction and their respective remedies:

"If one is actually defrauded by a false statement which induced him to enter into a contract, he has his remedy for the injury. The contract thus procured is not void, but voidable. He may either rescind the contract and recover any sums paid upon it or property delivered pursuant to it, or he may affirm the contract, take such benefits as are obtainable under it, and recover damages for the injuries sustained by reason of the false statement. *These alternative remedies, it will be seen, are inconsistent, and are not available in the same action; for one is based upon a rescission of the contract and the other upon an affirmance of it—one upon a contract implied by law obligating the wrongdoer to restore whatever of value he has received; the other in tort for damages for the injury done by the false statement. When the person injured elects the latter remedy, i.e., to sue for the tort, he affirms the contract, thus continuing it as a binding obligation.* And 'it is the rule that the defrauded party to a contract has but one election to rescind, that he must exercise that election with reasonable promptitude after the discovery of the fraud, and that, when he once elects, he must abide by his decision.' "

*Id.* at 256–57, 104 N.W. at 1029 (citations omitted) (emphasis added).

[¶ 69] The Court in *Gunderson v. Havana–Clyde Mining Co.*, 22 N.D. 329, 133 N.W. 554 (1911), further explained:

*"This is an action for deceit, not for rescission. There is a vast difference between the actions, and this difference must be constantly kept in mind in considering this case.* When the plaintiff had reached the conclusion that he had been defrauded, he had his election of two remedies: First, he could rescind upon the grounds that his assent to the contract had never been freely given, and return his stock and recover the money paid by him; or, second, he could ratify the sale, accept his stock with its consequential profits or losses, and maintain an action for damages against his deceivers. In the second case he refuses to rescind, in effect, and demands that the representations of the sellers be made good in damages. He, the purchaser, assumes all of the risks of the speculation, as he has in effect affirmed the contract of sale. Therefore his damages for the deceit must not include damages occasioned by the failure of the speculation. In this case Gunderson, having elected to ratify the sale instead of repudiating it as he might, assumed the speculation, and would be the winner if the mine made good, and the loser, if the mine failed. His damages would be the difference between what his stock would have been worth at the time of the sale if as represented, and what it was actually worth at that time. Or stated a little differently, he can compel the sellers to make good their representations by paying damages for those things they have misrepresented. We must go back to the day the stock was sold, and determine how much more plaintiff's stock would have been worth had the statements made to him been true. At such time both the buyer and seller believed, or at least hoped, that the mine would be a success. How much less would the plaintiff have been obliged to pay for the stock had he known the truth.... *It may be said that, had the plaintiff known that the ore was of such little value, he would not have bought the stock. The complete answer to that proposition is that the plaintiff by bringing an action for deceit elected to*

*ratify the contract, and did, in effect, buy the stock after he knew the value of the ore. . . . If it seems a hardship upon the buyers of the stock, we can only reply that they had a chance to repudiate the sales if fraudulent, and recover back their money.* This they refused to do, but, on the contrary, kept their stock until further developments proved it worthless, and then demanded that the defendants pay them six times the amount plaintiffs had paid for it. They wished to keep the stock and take all the chances there were of the mine paying out, and then, in case of failure, compel the defendants to make good Canan's representation that the stock was worth par. Only their modesty, probably, prevented them from demanding that they all be 'made independent' according to the promise of Canan. The purchasers' losses were occasioned by sticking to a bad bargain after they knew they had been deceived. For this poor judgment the defendants are not liable. Neither are they liable for the unkindness of nature in placing the mother vein outside of the defendants' property."

*Gunderson*, 22 N.D. at 332–35, 133 N.W. at 555–56 (emphasis added).

[¶ 70] The distinction between fraud and deceit claims was further explained in *Guild v. More*, 32 N.D. 432, 155 N.W. 44 (1915):

"A contract thus entered into is voidable and does not become binding on the defrauded party until his free consent thereto is given. In other words it does not become a valid contract or binding upon the defrauded party unless with knowledge of the fraud he ratifies or affirms it. The law naturally does not protect the wrongdoer, or give him any benefit or advantage by reason of the fraud he has perpetrated. And there-fore, *on discovery of the fraud, the defrauded party is given the option of rescinding or affirming the transaction.* In case of rescission, he is required to act promptly on discovery of the fraud. In such case, the contract ceases to exist for any purpose, and the parties stand in the same position as though it had never been made, and hence it is necessary that they be placed in the same position in which they were before the transaction took place. Therefore the party defrauded, in such case, is entitled to recover back whatever consideration he parted with, but he must, also, return or offer to return to the other party whatever he received. *In case of affirmance, he retains what he received, and is entitled to be compensated for the damages he sustained by reason of the false representation.* That is, the wrongdoer will be compelled to pay damages equal to the difference in value between what he gave and what he represented he would give.

"The transaction may be affirmed either expressly or by implication. And a person who retains as his own the property which he received in the transaction will necessarily be deemed the owner thereof. And having elected to assume the position of owner, will be compelled to abide by the selection made, and to be, not only invested with the rights and prerogatives, but also burdened with the duties and liabilities incident to such ownership. Hence, in such case, the measure of damages for the fraud and deceit practiced upon him is very properly predicated upon the basis that the defrauded party is the owner of the property, and therefore his damage is equal to the difference in value between the property he received and what he would have received, if the representations had been true."

*Guild,* 32 N.D. at 454–55, 155 N.W. at 49 (citations omitted) (emphasis added). *See also Coman v. Williams,* 65 N.W.2d 377, 379–80 (N.D.1954) (damages in a deceit action are determined as of the date of the transaction itself, since plaintiff retained goods); *Lanz v. Naddy,* 82 N.W.2d 809, 814 (N.D.1957) (plaintiff had right to rescind contract or affirm and sue for damages).

[¶ 71] In *Holcomb v. Zinke,* 365 N.W.2d 507, 511 (N.D.1985), this Court affirmed rescission of a real estate contract based on constructive fraud. The *Holcomb* Court considered and applied N.D.C.C. § 9–03–09 regarding constructive fraud and had no problem arriving at the appropriate remedy, noting: "The right to rescind a contract on the ground of fraud is granted by North Dakota Century Code § 9–09–02(1)." *Holcomb,* at 510 (footnote omitted).

[¶ 72] In *Hellman v. Thiele,* 413 N.W.2d 321, 325–26 (N.D.1987), the Court noted the plaintiffs were confused about whether their claim was fraud or deceit. While plaintiffs were arguing actual fraud, the Court correctly concluded the claim was one for "a tort of deceit" under sections 9–10–02 through 9–10–04 of the North Dakota Century Code. *Hellman,* at 326. The distinction between a contract-based fraud claim and a tort-based deceit claim was preserved in *Ostlund Chemical Co. v. Norwest Bank,* 417 N.W.2d 833, 835–36 (N.D.1988). Similarly, in *Olson v. Fraase,* 421 N.W.2d 820, 827 n. 3 (N.D. 1988), the Court recognized that fraud and deceit had "similar" definitions, but were distinguished by whether the action arose out of contract or of tort.

[¶ 73] But this Court has not always heeded Justice Burke's admonition in *Gunderson* to constantly keep in mind the "vast difference" between fraud and deceit. In *Asleson v. West Branch Land Co.,* 311 N.W.2d 533, 535 (N.D.1981), plaintiffs claimed money damages relating to the purchase of unimproved land. Remarkably, the Court expressed surprise that "North Dakota has not specifically stated what the rule is for damages for constructive fraud." *Id.* at 543. Even more remarkably, the *Asleson* Court cited *Gunderson* where this Court made a clear distinction between the tort of deceit which allows recovery of damages and the claim of fraud for avoiding a contract. *Asleson,* at 543. *See also Benefiet v. Hoiby,* 370 N.W.2d 513, 515 (N.D.1985) (question of fact whether "actual fraud" warranted recovery of damages in real estate purchase).

[¶ 74] The "vast differences" between fraud and deceit continued to blur in *West v. Carlson,* 454 N.W.2d 307 (N.D.1990), and in *Dewey v. Lutz,* 462 N.W.2d 435 (N.D.1990). In *West,* the Court correctly stated that "[a] person who has been fraudulently induced to enter into a contract may either rescind the contract, or retain the benefits of the contract and obtain damages for injuries from the fraud." 454 N.W.2d at 309. However, the Court failed to recognize that "damages for injuries from the fraud" require ratification of the contract and a suit for deceit. *See* N.D.C.C. § 9–10–02. As a result, the Court in *West* departed from nearly one hundred years of precedent and concluded that analysis under the "actual fraud" statute was appropriate, notwithstanding the lack of rescission and the impossibility of restoration of the status quo ante. *Id.* at 310 n. 1. The Court wrote:

"The statutory definitions of actual fraud and deceit are similar. Compare NDCC 9–03–08; 9–10–02 and 9–10–03. We have recently said that a fraud action brought under NDCC 9–03–08 applies to misrepresentations between parties to a contract, while deceit under NDCC 9–10–02 applies where there is

no contract between the parties. *Hellman v. Thiele*, 413 N.W.2d 321 (N.D. 1987); *see Olson v. Fraase*, 421 N.W.2d 820, 827 n. 3 (N.D.1988). Because this case involves a contract, our analysis is under the actual fraud statute."

*West*, at 310 n. 1. Interestingly, the Court in *West* cited *Hellman* for the proposition that fraud actions under N.D.C.C. § 9–03–08 apply to parties to a contract. *West*, at 310 n. 1. That citation and statement is correct insofar as fraud describes a lack of a misled party's consent to a contract due to the wrongdoer's misrepresentation or suppression of material facts. N.D.C.C. § 9–03–08. Up to that point, the dispute between parties to a contract is analyzed as fraud rather than as the tort of deceit. *See* N.D.C.C. § 9–10–02. However, when free consent is subsequently provided, the contract is ratified and any damages must be recovered in an action for deceit. These are the lessons from *Beare, Gunderson*, and *Guild*, which apparently were forgotten by the Court in *West* when it wrote: "Because this case involves a contract, our analysis is under the actual fraud statute." 454 N.W.2d at 310 n. 1.

[¶ 75] The lessons from our older cases were not only forgotten, but apparently abandoned, in the subsequent case of *Dewey*, 462 N.W.2d at 439, where the Court wrote:

"We have recognized that fraud and deceit are similar concepts. *Olson v. Fraase*, 421 N.W.2d 820, 827 n. 3 (N.D. 1988). Technically, fraud under NDCC 9–03 applies only when there is a contract between the parties; deceit under NDCC 9–10 applies when there is no contract between the parties. *Hellman v. Thiele*, 413 N.W.2d 321, 326 (N.D. 1987); *Ostlund Chemical Co. v. Norwest Bank*, 417 N.W.2d 833, 835–836 (N.D. 1988). Nevertheless, as pointed out long ago in *Beare v. Wright*, 14 N.D. 26,

103 N.W. 632, 634 (1905), conduct can be both fraudulent and deceitful."

[¶ 76] The *Dewey* Court was wrong on this point because the difference between fraud and deceit is much more than "a technicality." The Legislature has specified, and this Court's earliest cases explained, that fraud and deceit are distinctly separate claims. And while *Beare* did say *conduct* can be both fraudulent and deceitful, that Court also held the *claims* were mutually exclusive. 14 N.D. at 32, 103 N.W. at 634.

[¶ 77] The *Dewey* case is also notable for a seeming innocuous statement about fraud and deceit in the context of punitive damages:

"Curtis asserts that, because punitive damages can only be awarded under NDCC 32–03–07 'when the defendant has been guilty of oppression, fraud, or malice, actual or presumed,' and the jury found only that he committed deceit, punitive damages were improperly assessed against him. We disagree.

"The only significant distinction between the torts of fraud and deceit is whether the wrongdoer happens to be a party to a contract. *See Olson v. Fraase, supra*. The conduct prohibited under the separate statutory definitions of fraud and deceit is substantially identical. *See* 37 Am.Jur.2d *Fraud and Deceit* § 1, p. 20 (1968). We conclude that, for purposes of the punitive damages statute, fraud and deceit are synonymous."

*Dewey*, 462 N.W.2d at 442. As will be shown, the statement that fraud and deceit are "substantially identical" turned out to be anything but innocuous to this rule of law.

[¶ 78] Steps down the mistaken path started in *West* were continued in *Bourgois*, 466 N.W.2d 813. There, the Court initially, and correctly, concluded the plain-

tiff could not rescind a contract because he had completed performance and had been paid. *Id.* at 816. Plaintiff could not rescind his performance and therefore was deemed to have elected his remedy of damages in a tort action. *Id.* Nevertheless, the Court characterized Bourgois' claim as one for "actual fraud" rather than for deceit. *Id.* So too, in *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470, 474 (N.D.1991), the Court mixed the claims and remedies for fraud and deceit. In both cases, the Court focused on the status of the plaintiff and the defendant as parties (or not parties) to a contract, rather than on the parties' election between rescission or damages.

[¶ 79] The erroneous application of law was extended in *Dvorak v. American Family Mut. Ins. Co.,* 508 N.W.2d 329 (N.D.1993) where the Court stated:

> "The only significant distinction between the torts of fraud and deceit is whether the wrongdoer happens to be a party to a contract. *Dewey v. Lutz,* 462 N.W.2d 435 (N.D.1990). Technically, fraud under Section 9–03–08, N.D.C.C., applies to misrepresentations between parties to a contract, while deceit under Section 9–10–02, N.D.C.C., applies when there is no contract between the parties. *West v. Carlson,* 454 N.W.2d 307 (N.D.1990). However, the conduct prohibited under the separate statutory definitions of fraud and deceit is substantially identical. *Dewey v. Lutz,* 462 N.W.2d 435 (N.D.1990)."

*Dvorak,* at 332.

[¶ 80] First, the *Dewey* decision was flawed because real and important differences exist between deceit and fraud in addition to whether litigants are parties to a contract. Second, even accepting at face value the incomplete statements of law in *Dewey* and *West,* those cases do not support the conclusions drawn by the Court in

*Dvorak.* Rather, the Court in *West* stated the incomplete thought that the only difference between fraud and deceit was "technical" based on whether litigants were parties to a contract. The Court in *Dewey* used the "substantially identical" language to conclude the term "fraud" as used in North Dakota law which allows punitive damages was the same as "deceit." *Dewey,* 462 N.W.2d at 442. Of course, this result was required in *Dewey* because punitive damages were not available in actions arising from contract. *Id.* The jury awarded Dewey damages for the tort of deceit. The Court in *Dewey* correctly stated, "for *purposes of the punitive damages statute,* fraud and deceit are synonymous" due to the statute which permitted recovery upon proof of "oppression, fraud, or malice." *Id.* (emphasis added). However, that conclusion in *Dewey* cannot be carried over as it was in *Dvorak* to state no difference exists between a contract-based fraud claim for rescission under North Dakota Century Code chapter 9–03 and a tort-based deceit claim for damages under chapter 9–10. Third, the *Dvorak* Court was just wrong when it stated the same conduct is prohibited under fraud and deceit.

[¶ 81] The statutory definition of "actual fraud" is similar to the statutory definition of "deceit." However, important differences exist. Subsections 1 and 4 of N.D.C.C. §§ 9–03–08 and 9–10–02 are identical: "The suggestion as a fact of that which is not true by one who does not believe it to be true" and "A promise made without any intention of performing." However, subsection 2 is different. Actual fraud is defined as "[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true though that person believes it to be true." N.D.C.C. § 9–03–08(2). Deceit is defined as "[t]he assertion

as a fact of that which is not true by one who has no reasonable ground for believing it to be true." N.D.C.C. § 9–10–02(2).

[¶ 82] This difference was explained in *Nodak Oil Co. v. Mobil Oil Corp.*, where the same law was applied:

"The subsection 2 definitions are different. The import of the difference is that a plaintiff has a greater burden in a tort action based on an allegation of fraud than he has in the contract action for rescission, also based on an allegation of fraud. In the tort action, plaintiff must prove under subsection 2 that the assertion of fact was made by one who had *no reasonable grounds* for believing it to be true, whereas under the contract definition subsection 2, the plaintiff need only prove the assertion was made in a manner not warranted by the information of the person making it."

391 F.Supp. 276, 281 (D.N.D.1975), *rev'd on other grounds*, 533 F.2d 401 (8th Cir. 1976).

[¶ 83] Subsection 3 of 9–03–08 defines actual fraud as "[t]he suppression of that which is true by one having knowledge or belief of the fact." Subsection 3 of 9–10–02 defines deceit as "[t]he suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Again, the important difference is that a plaintiff has a greater burden in a tort action based on an allegation of deceit than in a contract action where a lack of consent is claimed.

[¶ 84] The final important difference is that subsection 5 for actual fraud is "[a]ny other act fitted to deceive." N.D.C.C. § 9–03–08(5). Deceit has no comparable provision. Therefore, the elements of fraud and deceit are different, and the distinction between the two claims is meaningful.

[¶ 85] Recently, this Court has given diverse application to the fraud and deceit statutes. Below is an extensive but not exhaustive overview of cases from the last ten years where this Court has applied fraud, deceit, and their respective remedies in anything but a consistent manner.

[¶ 86] On a number of occasions, the Court highlighted the clear distinction between fraud and deceit, discussed the required election of remedies, or specified the remedy of money damages in a deceit case or the need for rescission in a fraud case. *See Heart River Partners v. Goetzfried*, 2005 ND 149, ¶ 21, 703 N.W.2d 330 ("fraud perpetrated to induce a party to enter into the agreement is a ground for rescission, but is not a ground for reformation"); *Murphy v. Murphy*, 1999 ND 118, ¶¶ 12–16, 595 N.W.2d 571 (district court did not err finding plaintiff was not entitled to rescind transaction based on fraudulent inducement); *Barker v. Ness*, 1998 ND 223, ¶ 8, 587 N.W.2d 183 (fraudulent inducement victim must elect to affirm contract and sue for damages or rescind); *Albrecht v. Walter*, 1997 ND 238, ¶¶ 17–18, 572 N.W.2d 809 ("fraudulent inducement" appropriately raised as defense to collection action considered under fraud statutes); *Earthworks, Inc. v. Sehn*, 553 N.W.2d 490, 495 (N.D.1996) ("fraudulent inducement" claim properly dismissed where party did not seek rescission).

[¶ 87] Other cases have plainly continued down the wrong path with *West, Dewey*, and *Bourgois* by mixing the claims and their attendant remedies. *See Grandbois, Inc. v. City of Watford City*, 2004 ND 162, ¶¶ 19–20, 685 N.W.2d 129. In one case, the district court was wrongly chastised for correctly applying deceit, instead of fraud, in a damages case. *See WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶¶ 25–26, 730 N.W.2d 841 ("The court should have used the term 'fraud,' which

applies when there is a contract between the parties, rather than the term 'deceit,' which applies when there is no contract between the parties."); *First State Bank v. Moen Enterprises,* 529 N.W.2d 887, 891 n. 3 (N.D.1995) (distinction between fraud and deceit "is immaterial").

[¶ 88] Still other recent opinions have implicitly mixed claims for fraud and deceit or have not used the appropriate remedy for the stated claim. *See Ziegelmann v. DaimlerChrysler Corp.,* 2002 ND 134, ¶¶ 7, 17, 649 N.W.2d 556 (affirming dismissal because plaintiff could not prove damages as necessary elements of "torts of negligence, fraud and deceit"); *Schneider v. Schaaf,* 1999 ND 235, ¶ 21, 603 N.W.2d 869 (concluding district court did not err dismissing plaintiff's "fraud and deceit claim" because of failure to prove damages); *Fargo Foods, Inc. v. Bernabucci,* 1999 ND 120, ¶¶ 19–20, 596 N.W.2d 38 (holding that counter-claimants for money damages failed to prove "actual or tacit fraud"); *Kary v. Prudential Ins. Co. of America,* 541 N.W.2d 703, 705 (N.D.1996) (considering claim for money damages under actual fraud statute).

[¶ 89] Finally, before turning to disposition of this case, I anticipate someone arguing that allowing a beguiled party to affirm a fraud and maintain a breach of contract claim in the same action as a deceit claim is tantamount to allowing recovery for tortious breach of contract. The answer is an emphatic "no" for the reasons stated in *Pioneer Fuels, Inc. v. Montana–Dakota Utilities, Co.,* 474 N.W.2d 706 (N.D.1991), and *Delzer v. United Bank of Bismarck,* 527 N.W.2d 650 (N.D.1995).

[¶ 90] The plaintiff in *Pioneer Fuels* sued for breach of contract and deceit, and sought recovery of punitive damages. 474 N.W.2d at 707–08. The jury returned a verdict in plaintiff's favor, awarding dam-ages for breach of contract and deceit, and awarding punitive damages. *Id.* at 708. On appeal, this Court considered whether evidence supporting a breach of contract was sufficient to find deceit and to support the award of punitive damages. We stated:

"Tortious conduct must exist independently of the breach of contract and there must be proof of actual damages resulting from the independent tort. 'The independent tort must be separate and distinct from the breach of the contract. While the intentional tort may occur at the time of and in connection with the breach, or may arise out of the same transaction, it is not committed merely by breaching the contract, even if such act is intentional.' "

*Id.* at 710 (quoting 22 Am.Jur.2d *Damages* § 752 (1988)). "A breach of contract even if intentional, malicious, or in bad faith, is not enough to convert a contract action into a tort action." *Pioneer Fuels,* at 710 (citation omitted).

[¶ 91] The holding and rationale in *Pioneer Fuels* make clear that the same evidence will not support a finding of breach of contract and of deceit. Rather, the plaintiff must come forward with clear and convincing evidence of tortious conduct, independent of the breach. *Id.* In most cases, that evidence will not be of the breach itself, but of the wrongdoer's misrepresentations that induced the plaintiff into contracting in the first instance.

[¶ 92] The holding in *Pioneer Fuels* was discussed in *Delzer,* 527 N.W.2d at 653–54 as follows:

"Delzers argue that the tort of deceit may exist independently of the contract claim and that, under the trial court's instructions on contract and deceit, the verdict is not inconsistent. United responds that the jury's verdict is inconsistent and that the trial court properly

granted judgment as a matter of law on the deceit claim, because there was no evidence of deceit independent of the contract claim and there were no damages under Delzers' over-collateralization theory of deceit.

. . . .

"*Pioneer Fuels* stands for the principle that, where there is a breach of contract, there must be some additional, independent facts not connected to the manner of the breach of contract to support tort and exemplary damage claims. *See* 22 Am.Jur.2d, *Damages* § 752 (1988) (exemplary damages ordinarily not recoverable in action for breach of contract, unless breach amounts to an independent, willful tort). However, when the parties' actions do not meet the requirements for a contract, *Pioneer Fuels* does not preclude tort recovery for deceit, if the elements of deceit under Chapter 9–10, N.D.C.C., are established. *See Dewey v. Lutz, supra* (even if some defendants were not parties to contract, there was sufficient evidence to support jury's alternative findings of deceit by those defendants); *State Bank of Kenmare v. Lindberg,* 471 N.W.2d 470 (N.D.1991) (allegations of extra-contractual statements by lender which induced borrower to alter position sounds in tort)."

*Delzer,* at 653–54. While the Court in *Delzer* failed to distinguish between fraud as a contract action and deceit as a tort, in the context of the deceit claim appealed in that case, the Court did follow the holding in *Pioneer Fuels* to confirm that proof of tortious conduct must exist independent of a breach of contract. From this, it follows that affirmation of consent following fraud, and pursuit of a deceit claim, require proof separate and apart from the breach of contract. It further follows that recognition of a deceit claim arising out of a contractual relationship is not explicit or implicit recognition of a claim for tortious breach of contract.

[¶ 93] Returning to the case at bar, the complaint shows plaintiffs Erickson, Ramsey, and Dregseth sued for both fraud and deceit. Plaintiffs' requested remedy under both claims was specific performance of the contract or an award of money damages. No plaintiff sought to avoid the deal due to lack of consent. According to the law and the well-reasoned early cases from this Court applying that law, plaintiffs therefore affirmed their contracts and elected to sue in tort for recovery of damages. Thus, plaintiffs' viable claim was for deceit—not fraud—regardless of the existence of a contract.

## RAMSEY

[¶ 94] As to Ramsey, he had no contract with Brown or Capital Harvest to earn an interest in Capital Harvest. From this the majority follows *WFND, Grandbois, Delzer* and other decisions to conclude Ramsey's claim is for deceit because he is not party to a contract. Majority opinion at ¶ 30. As I have explained, those cases contain incomplete analysis and we instead should look to whether the plaintiff is seeking to avoid a contract or to recover damages for being mislead. While the majority and I come to our respective conclusions differently, in this instance it is distinction without a difference because Ramsey had no contract with Brown or Capital Harvest so there was no consent to affirm and no contract to ratify. Ramsey had nothing to rescind, and claiming fraud was not an option. Therefore, I concur with the majority that the district court committed legal error dismissing Ramsey's deceit claim. Majority opinion at ¶ 30. However, I cannot concur with the majority that Ramsey was not prejudiced by the error.

[¶ 95] The district court only concluded there was no allegation Brown made willful misrepresentations to Ramsey. Under deceit and N.D.C.C. §§ 9–10–02 and 9–10–03, this examination is too narrow and ignores direct and circumstantial evidence outside the contractual relationship between Brown and Erickson. That evidence could support a conclusion that Brown either suppressed information from Ramsey or that the information given to Ramsey by Brown or by Capital Harvest through Erickson was false, and that Ramsey was mislead to his detriment. I would reverse dismissal of Ramsey's deceit claim and remand for new trial.

[¶ 96] The majority concludes Ramsey's equitable claims were improperly dismissed, but it nevertheless affirms dismissal "[f]or the same reasons as our disposition of Ramsey's deceit claims." Majority opinion at ¶¶ 37, 41. Because I believe Ramsey's deceit claim was erroneously dismissed to Ramsey's prejudice, I would reverse and remand Ramsey's equitable claims for further proceedings as well.

## DREGSETH

[¶ 97] The majority next concludes Dregseth was not harmed by the district court's dismissal of his deceit claim for the same reason Ramsey was not prejudiced by dismissal of his deceit claim. Majority opinion at ¶ 32. Under the law of the case, I am compelled to agree with this result. However, the majority is unclear how its fraud-deceit analysis applies to both Ramsey and Dregseth under its application of the law because Ramsey had no contract with Brown, but Dregseth did claim to have a contract. In fact, Dregseth's breach of contract claim was submitted to the jury and it found no contract existed. I submit the lack of clarity in the majori-

ty's analysis is rooted in the confused state of law about which I have written above.

[¶ 98] By calling a claim one of "fraud" because litigants are parties to a contract, one is set adrift with no guiding law when, as in Dregseth's case, the defending party claims no contract existed. Following the majority's logic, apparently it was proper to submit this case to the jury as a "fraud" case because Dregseth claimed to have a contract with Brown. But after the jury returned a verdict agreeing with Brown that no contract existed between he and Dregseth, "deceit" law should have applied instead. This appears to be the legal contortion now employed by the majority to reverse dismissal of Dregseth's deceit claim. See Majority opinion at ¶ 33 ("[T]he jury's rejection of Erickson's fraud claim is not dispositive of Dregseth's deceit claim because the jury instruction for the fraud claim required a contract. . . .").

[¶ 99] Under my construction, neither Dregseth nor Ramsey had a fraud claim against Brown or Capital Harvest. But both Dregseth and Ramsey had deceit claims when they brought this action. Had the argument been made, they still would have had deceit claims after the jury found no contract existed between Brown and Dregseth. This is because both Ramsey and Dregseth allege Brown either affirmatively misled them or suppressed material information, all of which caused them damages.

## CAPITAL HARVEST

[¶ 100] I also respectfully dissent from that portion of the majority opinion affirming dismissal of claims against Capital Harvest because "any liability imposed upon Capital Harvest is imputed" to Brown. Majority opinion at ¶ 20. The majority simply concludes plaintiffs have failed to show the dismissal of Capital Harvest prejudiced them. However, ab-

sent a jury instruction requiring, or even allowing, Capital Harvest's liability to plaintiffs be imputed to Brown, we cannot know whether the jury's inability to find Capital Harvest liable was, or was not, prejudicial. Moreover, the majority's citation to *Dewey* is unavailing because there the jury awarded damages against the principal even in the absence of a jury instruction imputing liability to him. *See* Majority opinion at ¶ 20. Here, plaintiffs received neither an instruction nor a favorable jury finding, and this Court should be chary to conclude there has been a lack of prejudice.

### UNJUST ENRICHMENT

[¶ 101] Finally, plaintiffs' unjust enrichment claims against Brown were dismissed before trial. Plaintiffs, therefore, were never given an opportunity to have the district court examine the equitable claims after the jury determined the plaintiffs had no remedy at law. In view of the other issues remanded, I would remand the unjust enrichment claims for timely consideration under our law. *See* Majority opinion at ¶¶ 43–44.

[¶ 102] DANIEL J. CROTHERS.