1999 ND 215

Gilbert KUNTZ and Patricia Kuntz, Plaintiffs and Appellants,

v.

Wayne A. MUEHLER, also known as Dave Montgomery, and Investment Centers of America, Inc., Defendants and Appellees.

No. 990188.

Supreme Court of North Dakota.

Dec. 1, 1999.

Rehearing Denied Dec. 22, 1999.

**44**

Clark J. Bormann (argued) and Paul H. Myerchin of Bormann Law Office, Bismarck, N.D., for plaintiffs and appellants.

Randall J. Bakke (argued) and Michael J. Hagburg of Smith Bakke Hovland & Oppegard, Bismarck, N.D., for defendants and appellees.

NEUMANN, Justice.

[¶ 1] Gilbert and Patricia Kuntz appeal from the trial court's summary judgment. We affirm in part, reverse in part, and remand.

[¶ 2] In 1988, 1989, and 1990, the Kuntzes invested $71,000 in limited partnership investments with the Investment Centers of America ("ICA") and Wayne A. Muehler, an ICA financial planner. The investments included $22,000 in Aircraft Partners on May 26, 1988; $22,000 in National Leasing on May 26, 1988; $7,000 in Super 8 Motel/USA Assets on September 6, 1989; $15,000 in Brauvin on April 20, 1990; and $5,000 in Datronic on May 18, 1990. Muehler allegedly guaranteed the limited partnership investment's interest level and a repayment of the Kuntzes' capital contributions at the time of investment. Some of the limited partnership investments began to show declining returns as early as 1990. Muehler then allegedly assured the Kuntzes in January 1991, October 1992, and May 1995 that the investments would "catch up" and perform as guaranteed. After a conversation in May 1995, the Kuntzes concluded they were being defrauded by ICA and Muehler. On July 21, 1997, the Kuntzes began this action, asserting fraud and negligence claims.

[¶ 3] After pre-trial discovery, the Kuntzes moved to amend their complaint and seek punitive damages. The motion was denied. ICA and Muehler moved for summary judgment. The trial court granted the motion for summary judgment on April 21, 1999, concluding the Kuntzes' fraud claim was barred by N.D.C.C. § 28–01–16, the statute of limitations for fraud and deceit, and their negligence claim was barred by N.D.C.C. § 28–01–18, the professional malpractice statute of limitations. The Kuntzes moved for reconsideration under Rule 59, N.D.R.Civ.P., which the trial court denied on May 24, 1999. On May 28, 1999, the trial court entered an amended judgment modifying costs taxed by ICA and Muehler. The Kuntzes appeal.

[¶ 4] Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Smith v. Land O'Lakes, Inc.*, 1998 ND 219, ¶ 9, 587 N.W.2d 173. The evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Stanley v. Turtle Mountain Gas & Oil, Inc.*, 1997 ND 169, ¶ 6, 567 N.W.2d 345. Issues of fact may become issues of law, if reasonable persons could reach only one conclusion from the facts. *Hurt v. Freeland*, 1999 ND 12, ¶ 9, 589 N.W.2d 551.

[¶ 5] The Kuntzes argue their fraud claim is not barred by N.D.C.C. § 28–01–16, the six-year statute of limitations for fraud and deceit. The Kuntzes contend ICA and Muehler induced them to invest in limited partnerships by guaranteeing a high-interest return, along with a return of their principal. ICA and Muehler asserted the statute of limitations as a defense to

the fraud claim. The trial court granted summary judgment on the claim, concluding the Kuntzes' "claims are time barred and accordingly should be dismissed. It is clear that more than six years elapsed from the time that the investments were made and the [Kuntzes'] discovery." We agree.

[¶ 6] A six-year limitation period is applicable to actions for fraud and deceit. N.D.C.C. § 28–01–16(6). As we held in *Wells v. First American Bank West,* 1999 ND 170, 598 N.W.2d 834:

> Because [N.D.C.C. § 28–01–16] is silent on when an action accrues, the determination is left to the court. *Schanilec v. Grand Forks Clinic, Ltd.,* 599 N.W.2d 253, 1999 ND 165, ¶ 11 (citing *Baird v. American Medical Optics,* 155 N.J. 54, 713 A.2d 1019, 1025 (1998)). In *Osland v. Osland,* 442 N.W.2d 907, 908 (N.D.1989), this Court said that generally the statute of limitations begins to run from the commission of the wrongful act giving rise to the cause of action. We have also recognized, however, this rule is often harsh and unjust, which is why so many courts have adopted the discovery rule. *Schanilec,* at ¶ 11. "The discovery rule is meant to balance the need for prompt assertion of claims against the policy favoring adjudication of claims on the merits and ensuring that a party with a valid claim will be given an opportunity to present it." *Id.* (citing *Buck v. Miles,* 89 Hawaii 244, 971 P.2d 717, 722 (1999)). *See also MDU Resources Group v. W.R. Grace and Company,* 14 F.3d 1274, 1277 (8th Cir.1994) (citing *Wall v. Lewis,* 366 N.W.2d 471, 473 (N.D.1985); *Iverson v. Lancaster,* 158 N.W.2d 507 (N.D.1968)) ("To determine the point at which any statute of limitations begins to run, North Dakota applies the discovery rule.").

> The discovery rule is an exception to the limitations and, if applicable, determines when the claim accrues for the purpose of computing limitations. The discovery rule postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury. Courts generally apply the discovery rule when it would have been difficult for the plaintiff to have learned of the negligent act or omission that gave rise to the legal injury. *Bates v. Texas State Technical College,* 983 S.W.2d 821, 828 (Tex.Ct.App.1998) (citing *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996)). We have used an objective standard for the knowledge requirement under the discovery rule. *BASF Corp. v. Symington,* 512 N.W.2d 692, 695 (N.D.1994). The focus is upon whether the plaintiff is aware of facts that would place a reasonable person on notice a potential claim exists, without regard to the plaintiff's subjective beliefs. *Id.* (citing *Biesterfeld v. Asbestos Corp. of America,* 467 N.W.2d 730 (N.D.1991)).

*Wells,* at ¶¶ 9–10.

[¶ 7] The Kuntzes brought this action in July 1997. If fraud was committed, the Kuntzes either knew or should have known they were being defrauded before July 1991. *See Wells,* at ¶ 10. The Kuntzes listed the limited partnership investments as "at risk" on signed tax forms from 1988 to 1991. During that time, they also signed documents and received a prospectus for each limited partnership which provided the investments were not risk free. More than one limited partnership investment was not performing as allegedly guaranteed in January 1991. Even with the evidence viewed in the light most favorable to the Kuntzes, a reasonable person under these circumstances would have or should have discovered the alleged fraud before July 1991.[1] *See Stanley,* at ¶ 6; *BASF Corp.,* at 695.

---

1. The Kuntzes also argue the trial court abused its discretion and erred in denying a motion to amend their complaint to allow punitive damages based on the fraud claim. We need not decide this issue because the

[¶ 8] The Kuntzes also argue their negligence claim is not barred by N.D.C.C. § 28–01–18. The Kuntzes contend ICA and Muehler negligently breached a duty to act with care when investing the Kuntzes' funds. ICA and Muehler moved for summary judgment, asserting the two-year professional malpractice statute of limitations as a defense to the negligence claim. N.D.C.C. § 28–01–18(3). The trial court granted summary judgment on the negligence claim, concluding:

> N.D.C.C. § 28–01–18, the [professional] malpractice statute of limitations, should be deemed applicable to investment counselors, like Mr. Muehler. This statute would have required commencement of a lawsuit alleging professional malpractice within two years of the time the circumstances constituting malpractice were known. Here it is evident that the knowledge by the [Kuntzes] existed well in advance of two years ... the malpractice claim would also be time barred.

We disagree.

[¶ 9] The interpretation of a statute is a question of law, fully reviewable by this Court. *City of Devils Lake v. Corrigan*, 1999 ND 16, ¶ 8, 589 N.W.2d 579. In *Jilek v. Berger Electric, Inc.*, 441 N.W.2d 660, 661–63 (N.D.1989), this Court explained the analysis required to determine whether an occupation was professional under N.D.C.C. § 28–01–18:

> While the statute itself does not spell out the professions which it covers, the legislative history of NDCC Sec. 28–01–18(3) suggests that the "Legislature envisioned more than one profession in its concept of malpractice." *Johnson* [*v. Haugland*, 303 N.W.2d 533, 539 n. 5 (N.D.1981)].
>
> * * * *
>
> Courts use varying approaches to resolve whether an occupation is a profession for purposes of a malpractice statute of limitations. There are three distinct lines of cases.
>
> * * * *
>
> The third approach, and one that we favor, is reliance on a dictionary definition of "profession" to encompass specialized knowledge and intensive preparation in skills as well as the scholarly principles underlying such skills. *E.g.*, *Tylle v. Zoucha*, 226 Neb. 476, 412 N.W.2d 438 (1987); *Cristich v. Allen Engineering, Inc.*, 458 So.2d 76 (Fla. Dist.Ct.App.1984). Just as we did in *Johnson* when we were called upon to define "malpractice," we again look to the dictionary for enlightenment on the meaning of "profession."
>
> *Webster's New World Dictionary* (Second College Edition 1980) defines "profession" as "a vocation or occupation requiring advanced education and training, and involving intellectual skills such as medicine, law, theology, engineering, teaching, etc." *Black's Law Dictionary* (5th ed. 1981) similarly defines "profession" and explains that "the labor and skill involved in a profession is predominantly mental or intellectual, rather than physical or manual." These definitions, at least implicitly, distinguish a profession from a trade. *Webster's New World Dictionary*, *supra*, defines "trade" as "skilled work, as distinguished from unskilled work or from a profession or business." *Black's Law Dictionary* also distinguishes a "trade" from the "learned professions."

*Jilek*, at 661–63 (N.D.1989) (rejecting application of the professional malpractice statute of limitations to all state licensed occupations or limiting application to only those professions recognized at common law).

[¶ 10] We have applied N.D.C.C. § 28–01–18 to medical doctors, attorneys, architects, and engineers, but not electricians. *See Jacobsen v. Haugen*, 529 N.W.2d 882, 885 (N.D.1995) (applying the statute to attorneys); *Sime v. Tvenge Associates Architects & Planners, P.C.*, 488

Kuntzes' fraud claim is barred by N.D.C.C. § 28–01–16(6).

N.W.2d 606, 609 (N.D.1992) (applying the statute to architects and engineers); *Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133, 137 (N.D.1990) (applying the statute to medical doctors); *Jilek*, at 663 (holding the statute does not apply to electricians). Occupations other jurisdictions have considered professions include: dentists, certified public accountants, oculists, optometrists, pharmacists, x-ray operators, and psychiatrists. Restatement 2d Torts § 299A, cmt. b, app. (1996) (distinguishing professions from trades such as machinists, electricians, carpenters, blacksmiths, plumbers, and insurance agents). Generally, a profession requires a college degree in a specific field. *Jilek*, at 663. However, a college degree does not automatically designate the occupation as a professional practice.

> A profession is a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service.... [This] definition stresses the long and intensive program of preparation to practice one's chosen occupation traditionally associated only with professions.

*Jorgensen v. State National Bank & Trust Company*, 255 Neb. 241, 583 N.W.2d 331, 334–35 (1998) (quoting *Tylle*, at 441 and holding "retirement planners" are not professionals).

[¶ 11] Muehler has received educational training. He earned an associate's degree from Bismarck State College, completed a series of courses through the College for Financial Planning of Denver, and has passed the National Association of Securities Dealers Series Seven and Sixty–Three tests. He also completes fifteen hours of continuing education courses annually. However, a certified financial planner is not required to possess a college degree. CFP Board, General Information Booklet, Educational Requirements, <http://www.cfp-board.org/cert_gibs2.html>. *See Jilek* at 663; N.D.C.C. § 10–04–10.

[¶ 12] A certified financial planner is not an occupation that requires the specialized knowledge, long and intensive preparation in skills, and scholarly principles underlying such skills typically associated only with professions. *See Jilek*, at 663; *Jorgensen*, at 334–35; *Tylle*, at 441. Under N.D.C.C. § 28–01–18, Muehler's business is one to which N.D.C.C. § 28–01–16 and its six-year statute of limitations applies. *See Jilek*, at 663. This suit was initiated on July 21, 1997. One of the allegedly negligent acts occurred in May 1995, within the six-year statute of limitations.

[¶ 13] We affirm the summary judgment on the fraud claim, reverse the summary judgment on the negligence claim, and remand.

[¶ 14] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.