2001 ND 154

**Frank ROSE, individually and on behalf of all others similarly situated, Plaintiff and Appellant,**

v.

**UNITED EQUITABLE INSURANCE COMPANY, Standard Life and Accident Insurance Company, Defendants and Appellees,**

and

**United Equitable Life Insurance Company, Defendant.**

**No. 20000333.**

Supreme Court of North Dakota.

Aug. 29, 2001.

Monte L. Rogneby (argued), H. Patrick Weir, Vogel Law Firm, Timothy Q. Purdon (appeared) and Thomas A. Dickson, Dickson & Purdon, Bismarck, ND, for plaintiff and appellant.

Lawrence A. Dopson (argued), Zuger Kirmis & Smith, Bismarck, ND, Michael F. Braun, Schuyler Roche & Zwirner, Chicago, IL, for defendant and appellee United Equitable Insurance Company.

Stephen W. Plambeck (argued) and Daniel J. Crothers (appeared), Nilles, Hansen & Davies, Ltd., Fargo, ND, Scott D. Daniel (appeared), Greer, Herz & Adams, Galveston, TX, for defendant and appellee Standard Life and Accident Insurance Company.

VANDE WALLE, Chief Justice.

[¶ 1] Frank Rose appealed from a judgment[1] dismissing his action against Standard Life and Accident Insurance Company ("Standard"), United Equitable Insurance Company ("United"), and United Equitable Life Insurance Company.[2]

We conclude the district court, relying on the statute of limitations, erred in dismissing Rose's action on the pleadings, and we reverse and remand for further proceedings.

[¶ 2] Rose, who was born in 1906, bought a long term care insurance policy from United in 1982. United later assigned all its North Dakota long term care policies to Standard. Since 1982, United and Standard have renewed Rose's insurance on a yearly basis.

[¶ 3] In 2000, Rose, individually and on behalf of all others similarly situated, sued for damages for constructive fraud, actual fraud, consumer fraud, false advertising, and negligent misrepresentation. In his complaint, Rose generally alleged, among other things: (1) the insurers represented the policies were guaranteed to be renewable; (2) the policies "were, in fact, defective from the outset, as they were improperly underwritten and underpriced, conditions which defendants knew from the start would necessitate dramatic premium increases ... to remain in force;" (3) the insurers did not "disclose the known risk of premium increases, the plan to increase premiums, and the resulting attendant unaffordability of the LTC policies to plaintiff and the Class;" (4) the insurers represented "that the contracted-for annual premium rate was the 'Total Premium' that policyholders would have to pay in order to maintain their LTC policies;" and (5) the premium was $418 when Rose bought the policy and later

---

1. The notice of appeal states it is "from the Judgment of Dismissal dated November 16, 2000." The district court's order for entry of judgment was issued on November 16, 2000. A consistent judgment was subsequently entered on November 20, 2000. We treat this as an appeal from the subsequently entered consistent judgment. *E.g., Larson v. Norkot*

*Mfg., Inc.*, 2001 ND 103, ¶ 1, 627 N.W.2d 386, n. 1.

2. United Equitable Life Insurance Company, a subsidiary of United Equitable Insurance Company, is in receivership, has been dismissed without prejudice, and is not a party to this appeal.

rose to $1,909.36. Rose also generally alleged:

(8) Not only did defendants fail to disclose the anticipated premium increases, but in 1986 defendants ceased selling the LTC policies, an act known as "closing the block" of business in the insurance industry. This fact was never disclosed to the policyholders. By "closing the block," defendants capped its pool of insureds under these policies and barred new insureds from purchasing LTC policies. This led to a "death spiral" that guaranteed that plaintiff's and the Class' LTC premium rates would increase at an even greater rate. Closing the block is particularly significant in LTC insurance situations, where the pool is largely comprised of senior citizens. This is due to the fact that policyholders in the closed block, including plaintiff and the Class, are forced to pay the higher premiums that arise from such block closings or risk losing their LTC coverage altogether should they cease paying the increased premiums. This is because their age and/or medical history prevents them from obtaining alternative LTC policies elsewhere.

. . . .

(45) In instituting their LTC premium increases, defendants sent form letters to plaintiff and the Class which misrepresented the reasons for the increase, stating that the increase was due to "increased utilization of benefits." This letter also fraudulently stated that the insured's "nursing home policy provides valuable protection." At no time did defendants advise plaintiff and the Class of the inherent defects in these LTC policies, that those defects were the direct cause of the premium increases, and that more increases were planned.

[¶ 4] In his claims for constructive fraud and actual fraud, Rose alleged the defendants failed to inform him of or suppressed the following:

(a) the LTC policies had been initially underpriced;

(b) the actuarial assumptions underlying the pricing of the LTC policies were based on limited or incomplete data;

(c) the LTC policies were poorly underwritten;

(d) given these problems, premium rate increases were inescapable;

(e) defendants planned on seeking a series of premium increases for the LTC policies;

(f) defendants would cease selling these LTC policies, "closing the block" of their LTC business and/or the ramifications of such an action;

(g) the closed LTC block was experiencing or would experience a "selection spiral" or "death spiral;"

(h) defendants were intentionally raising their premiums to exorbitant rates in order to obtain windfall profits by forcing the insureds to drop their policies and thereby avoid future claims; and/or

(i) defendants intended to pass any risk of loss due to their own fraud or neglect on to the consumer in the form of higher premiums.

[¶ 5] Rose also pleaded claims for consumer fraud under N.D.C.C. ch. 51–15, false advertising under N.D.C.C. ch. 51–12, and negligent misrepresentation, in that the policy was sold as "guaranteed renewable," the premium quoted at the time of application was represented to be the "Total Premium," the insurers misrepresented the reasons for premium increases, the insurers fraudulently stated the policies provided "valuable protection," and the insurers "knew or should have known that these statements were untrue, false, and misleading."

[¶ 6] Accepting the parties' stipulation, the court entered a scheduling order delaying consideration of Rose's September 22, 2000, motion for class certification until after consideration of the insurers' motions for judgment of dismissal on the pleadings on the ground Rose's complaint was barred by the statute of limitations. On November 16, 2000, the district court issued an order granting the insurers' N.D.R.Civ.P. 12(b)(v) motions to dismiss Rose's complaint for failure to state a claim upon which relief could be granted. The court explained:

> A reasonable person under the circumstances alleged in the Complaint either would have known or should have known and discovered before August 2, 1994, that a cause of action might exist against Defendants Standard Life and Accident Insurance Company and United Equitable Insurance Company.

> The Court further concludes from the circumstances alleged in the Complaint that Plaintiff was apprised of sufficient facts before August 2, 1994, to put a reasonable person on notice to inquire into possible claims against Defendants Standard Life and Accident Insurance Company and United Equitable Insurance Company, and that the statute of limitations applicable to the claims alleged in the Complaint, therefore, began to run before August 2, 1994, and expired before August 2, 2000, because Plaintiff, based upon the information available to him, failed in his obligation to find out what legal rights would arise from the facts known to him. Accordingly, Plaintiff's Complaint is barred by the six year statute of limitations and must be dismissed as a matter of law.

A judgment of dismissal was entered on November 20, 2000.

[¶ 7] On appeal Rose contends (1) notice of a rate increase is not notice of fraud in the sale and renewal of defective and worthless insurance; (2) United's statute of limitations defense must fail because its fraud is ongoing; (3) United committed fraud after August 2, 1994, which is within the limitations period; and (4) United's responsibility to Rose did not end in 1986, when it entered into an assumption reinsurance agreement with Standard.

[¶ 8] Standard contends Rose's claims are barred by the six-year statute of limitations found in N.D.C.C. § 28–01–16, arguing, among other things: (1) "The injury of which Rose complains, regardless of the nature of the allegedly wrongful conduct that precipitated that injury, is the increased insurance premiums;" and (2) the reason for premium increases is irrelevant when the fact of premium increases would put a reasonable person on notice to inquire about a possible claim. United contends: "Rose discovered in 1986, if not in 1982, that the representation made to induce him to purchase the LTC policy, that there would never be a premium increase, was not true. His failure to act on that knowledge until August of 2000 bars him from any recovery."

[¶ 9] "A six-year limitation period is applicable to actions for fraud and deceit. N.D.C.C. § 28–01–16(6)." *Kuntz v. Muehler*, 1999 ND 215, ¶ 6, 603 N.W.2d 43. "A fraud action is not barred by the passage of time until six years after discovery of the facts constituting the fraud." *Phoenix Assurance Co. of Canada v. Runck*, 366 N.W.2d 788, 791 (N.D.1985).

> The discovery rule postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury.... We have used an objective standard for the knowledge requirement under the discovery rule. The focus is upon whether the plaintiff is aware of facts that would

place a reasonable person on notice a potential claim exists, without regard to the plaintiff's subjective beliefs. *Wells v. First Am. Bank West,* 1999 ND 170, ¶ 10, 598 N.W.2d 834 (citations omitted). A statute of limitations defense is fact-driven and not ordinarily susceptible of summary disposition. *Waxler v. Dalsted,* 529 N.W.2d 176, 179 (N.D.1995).

[¶ 10] "The purpose of a Rule 12(b)(v) motion is to test the legal sufficiency of the statement of the claim presented in the complaint." *Towne v. Dinius,* 1997 ND 125, ¶ 7, 565 N.W.2d 762. A court's scrutiny of pleadings should be deferential to the plaintiff, unless it is clear there are no provable facts entitling the plaintiff to relief. *Wells,* 1999 ND 170, ¶ 7, 598 N.W.2d 834. "Because determinations on the merits are generally preferred to dismissal on the pleadings, Rule 12(b)(v) motions are viewed with disfavor." *Towne,* at ¶ 7. A complaint should not be dismissed under N.D.R.Civ.P. 12(b)(v) for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Johnson & Maxwell, Ltd. v. Lind,* 288 N.W.2d 763, 765 (N.D.1980).

The complaint is to be construed in the light most favorable to the plaintiff, and the allegations of the complaint are taken as true. The motion for dismissal of the compliant should be granted only if it is disclosed with certainty the impossibility of proving a claim upon which relief can be granted.

*Id.* (citations omitted). "This court will generally reverse a judgment dismissing a complaint for failure to state a claim whenever we can discern a potential for proof to support it." *Towne,* at ¶ 7.

[¶ 11] United and Standard essentially argue Rose paid increased premiums more than six years before filing suit, and his claims are barred by the statute of limitations as a matter of law. Conceivably, a premium increase asserted to be due, for example, to increased utilization of benefits may not provide notice of a potential claim for damages due to such things as a defective policy, improperly underwritten and underpriced, or "closing the block," causing a "death spiral" guaranteeing premium increases. We agree with the insurers that any claim the insurers' representation the initial annual premium rate was the "total premium" and could never be increased for any reason is barred by the statute of limitations. We are unwilling, however, to hold, as a matter of law, that a premium increase, without more, is notice of a potential claim for constructive fraud, actual fraud, consumer fraud, false advertising, or negligent misrepresentation, barring any possibility of recovery if suit is brought more than six years after a premium increase. Construing Rose's complaint in the light most favorable to him, we are unable to conclude it discloses "with certainty the impossibility of proving a claim upon which relief can be granted," *Johnson & Maxwell, Ltd.,* 288 N.W.2d at 765, or that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *id.*

[¶ 12] The judgment is reversed and the matter is remanded for further proceedings.

[¶ 13] ROBERT O. WEFALD, D.J., and DALE V. SANDSTROM, WILLIAM A. NEUMANN and MARY MUEHLEN MARING, JJ., concur.

[¶ 14] The Honorable ROBERT O. WEFALD, D.J., sitting in place of KAPSNER, J., disqualified.