2016 ND 103

Greg HOLVERSON, Plaintiff
and Appellee

v.

Susan LUNDBERG, as Trustee of
the Gabriel J. Brown Trust,
Defendant and Appellant.

No. 20150313.

Supreme Court of North Dakota.

May 31, 2016.

Lawrence A. Dopson, Bismarck, N.D., for plaintiff and appellee; submitted on brief.

William J. Delmore, Bismarck, N.D., and Jill J. Sholts, Eden Prairie, MN, for defendant and appellant; submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] Susan Lundberg, as Trustee of the Gabriel J. Brown Trust, appealed from a summary judgment quieting title in a tract of land to Greg Holverson, directing the Trust to convey the land to Holverson, and dismissing the Trust's counterclaims

for rescission or for damages for breach of contract. The Trust argues summary judgment was inappropriate because it raised disputed factual issues on its counterclaims. We conclude the Trust's counterclaims are barred by the statute of limitations, and we affirm.

I

[¶ 2] In January 1978, Robert Lundberg, the original Trustee of the Trust, and Holverson executed a contract for deed to convey a 40.4 acre tract of land in rural Burleigh County to Holverson for $48,480. The contract for deed required Holverson to make a down payment of $8,000 and eight amortized annual payments of $4,700 from March 15, 1979, through March 15, 1988, when the balance on the contract was due. The contract prohibited Holverson from assigning his interest without first obtaining the Trust's written consent and required Holverson to pay all taxes and assessments thereafter levied on the land. The contract said that "time of payment shall be an essential part" of the agreement, that the Trust may declare the entire purchase price due and the contract cancelled and terminated if Holverson defaulted on the payment of principal, interest, taxes, or assessments on the land, and that neither the extension of time for payment nor waiver shall affect the Trust's right to cancel the contract. The contract also provided that if Holverson sought to build a residence on the land, the Trust would convert the contract into a note and mortgage by giving Holverson a warranty deed for all of the land, and, in return, the Trust would receive from Holverson a note and mortgage for the unpaid balance at that time and the Trust would subordinate its interest on not more than five acres of the land for Holverson to obtain financing for the residence.

[¶ 3] In May 1980, Holverson owed a balance of $39,018.40 on the contract for deed. Robert Lundberg, as Trustee, released 5.09 acres from the contract and deeded that land to Holverson. Holverson executed a mortgage on the 5.09 acres as additional security for the contract for deed and the single indebtedness of $39,018.40 under the same repayment terms as the contract for deed. The Trust's mortgage on the 5.09 acres was subordinated to Holverson's mortgage with a Bismarck bank.

[¶ 4] Holverson made sporadic payments to the Trust through November 1997. According to Susan Lundberg, the successor Trustee, Holverson represented that he could not make the promised payments and he filed for bankruptcy twice during that time. In November 1997, Holverson and Susan Lundberg, as Trustee, agreed to amend the contract for deed and mortgage to subordinate the Trust's mortgage to a $40,000 loan by Capital Credit Union to Holverson. According to Susan Lundberg, on November 10, 1997, Holverson told her Capital Credit Union would lend him $40,000 only if the Trust agreed to subordinate its mortgage to a loan from Capital Credit Union. Susan Lundberg claimed she agreed to amend the contract for deed and mortgage based on Holverson's representation that he had not yet obtained the loan from Capital Credit Union and he needed her consent to subordinate the Trust's mortgage. The parties' 1997 agreement said the unpaid principal balance owed to the Trust was $35,000 and established a monthly payment schedule through November 2008.

[¶ 5] Holverson thereafter continued to make sporadic payments under the amended contract for deed and mortgage. According to Susan Lundberg, she wrote Holverson several times through December 2012, asking him to make required

payments. In December 2012, the Trust initiated statutory proceedings to cancel the contract for deed under N.D.C.C. ch. 32–18 and served Holverson with a notice of default requiring him to pay the Trust $43,577.19 by June 17, 2013, to correct the default.

[¶ 6] Holverson agreed to pay the balance due under the contract for deed and mortgage. According to Susan Lundberg, she reviewed records at the Burleigh County Recorder's Office on June 12, 2013, and learned Holverson had obtained and satisfied several other mortgages on the land while making sporadic payments to the Trust since 1978. Susan Lundberg claimed she discovered Holverson had executed five mortgages on the land and satisfied three of the mortgages between 1978 and November 7, 1997, and he had obtained six mortgages and satisfied seven mortgages after November 7, 1997. She claimed she also discovered Holverson's stated reason for amending the contract for deed and mortgage on November 10, 1997, was false, because the record in the recorder's office reflected he had obtained the Capital Credit Union mortgage several days before Holverson's contract for deed and mortgage with the Trust were amended on November 10, 1997. Holverson subsequently made a timely tender of a certified check for the balance due under the contract for deed and mortgage, and the Trust refused to accept the check and execute a warranty deed for the land.

[¶ 7] Holverson sued the Trust to quiet title and determine ownership of the land. He alleged the Trust refused to accept the tender of the certified check for the balance due under the contract on June 14, 2013, and he sought to require the Trust to accept the check and convey the land to him.

[¶ 8] The Trust answered and counterclaimed, alleging fraud and breach of contract. The Trust claimed Holverson represented he could not pay under the terms of the contract for deed, he fraudulently induced the Trust to forebear from rescinding the contract by promising to keep current on the payments, and Susan Lundberg relied upon his misrepresentations in amending the contract for deed in November 1997 instead of rescinding the contract. The Trust sought to rescind the contract, alleging Susan Lundberg was not aware of Holverson's fraudulent misrepresentations when the statutory procedure to cancel the contract for deed was initiated in December 2012. The Trust alternatively claimed that if rescission was not ordered, the Trust was entitled to damages for breach of contract.

[¶ 9] Holverson's reply to the Trust's counterclaim generally denied the Trust's allegations of fraud and misrepresentation and affirmatively pled accord and satisfaction, estoppel, laches, payment, release, statute of limitations, and waiver. Holverson moved for summary judgment, claiming he tendered the entire amount due under the contract and was entitled to a warranty deed and satisfaction of the mortgage. He claimed the Trust waived his breaches by accepting payments and he did not commit fraud because his other mortgages were recorded. The Trust opposed Holverson's motion, claiming there were factual disputes about the counterclaims for rescission and for damages.

[¶ 10] The district court granted Holverson's motion for summary judgment, directing the Trust to convey the land to him and dismissing the counterclaims. The court ruled the Trust's conclusory allegations about fraud and misrepresentation failed to raise a disputed issue of material fact on the counterclaims. The court concluded the Trust presented no information indicating Holverson entered into the contract for deed without intend-

ing to perform and said the Trust's allegations that Holverson satisfied several other mortgages on the property while failing to make required payments to the Trust were conclusory and failed to demonstrate Holverson executed the contract without intending to perform. The court explained failing to make payments in full and on time provided no evidence of Holverson's mental state when he entered into the contract and merely indicated an inability or unwillingness to perform at a later date. The court said that if Holverson breached the contract for deed because he executed other mortgages on the land during the term of the contract, the Trust's remedy was to cancel the contract. The court also explained that if Holverson made false statements to induce Susan Lundberg to amend the contract for deed and mortgage in 1997, the Trust's remedy was to cancel the contract. The court said by serving the notice of default on Holverson, the Trust was obligated by statute to allow Holverson six months to cure the default and he cured within that time. The court decided the Trust was not entitled to damages as a result of Holverson's failure to make timely payments because the acceptance of late and reduced payments for more than 30 years without objecting waived the contractual provision making time of the essence. The court concluded the Trust initiated the statutory process to cancel the contract for deed after Holverson defaulted, Holverson performed under the statutory requirements to cure his default, and the Trust was obligated to accept the certified check. The court's judgment awarded Holverson "reasonable" attorney fees.

[¶ 11] The Trust appealed from that judgment, and a majority of this Court dismissed that appeal because the judgment awarding Holverson an undetermined amount of "reasonable" attorney fees was not final. *Holverson v. Lundberg*, 2015 ND 225, ¶ 1, 869 N.W.2d 146. Holverson thereafter withdrew his claim for attorney fees and an amended judgment omitting the award of attorney fees was entered.

II

[¶ 12] The standards for our review of a summary judgment are well established:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record. On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law. Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Tibert v. Nodak Mut. Ins. Co.*, 2012 ND 81, ¶ 8, 816 N.W.2d 31 (quoting *Myaer v. Nodak Mut. Ins. Co.*, 2012 ND 21, ¶ 9, 812 N.W.2d 345).

[¶ 13] "'Summary judgment is inappropriate if neither party is entitled to judgment as a matter of law or if reason-

able differences of opinion exist as to the inferences to be drawn from the undisputed facts.'" *Riedlinger v. Steam Bros., Inc.,* 2013 ND 14, ¶ 10, 826 N.W.2d 340 (quoting *Burris Carpet Plus, Inc. v. Burris,* 2010 ND 118, ¶ 10, 785 N.W.2d 164). "[T]he district court's 'role is limited to determining whether the evidence and inferences to be drawn therefrom, when viewed in the light most favorable to the party opposing summary judgment, demonstrate that there are no genuine issues of material fact.'" *Farmers Union Oil Co. v. Smetana,* 2009 ND 74, ¶ 10, 764 N.W.2d 665 (quoting *Heng v. Rotech Med. Corp.,* 2004 ND 204, ¶ 34, 688 N.W.2d 389). Deciding an issue by summary judgment is not appropriate if the court must draw inferences and make findings on disputed issues of material fact. *Smetana,* at ¶ 10. The court may not "weigh the evidence, determine credibility, or attempt to discern the truth of the matter when ruling on a motion for summary judgment." *Id.* We have said, however, "factual issues become appropriate for summary judgment 'when reasonable minds can draw but one conclusion from the evidence.'" *Jones v. Barnett,* 2000 ND 207, ¶ 4, 619 N.W.2d 490 (quoting *Opp v. Source One Mgmt., Inc.,* 1999 ND 52, ¶ 16, 591 N.W.2d 101).

### III

[¶ 14] The Trust argues summary judgment was inappropriate because there are disputed factual issues about whether Holverson made promises he did not intend to perform and whether he fraudulently induced Susan Lundberg to amend the contract for deed and mortgage in 1997. The Trust asserts Holverson executed and satisfied several other mortgages on the property while not paying the Trust, which the Trust claims shows he made promises he did not intend to perform. The Trust also argues Holverson fraudulently induced Susan Lundberg to amend the contract for deed and mortgage on November 10, 1997, by falsely misrepresenting the reason for the amendment was to induce Capital Credit Union to lend him $40,000, despite obtaining the Capital Credit Union loan several days earlier. The Trust asserts the Trustee was not aware of Holverson's fraud until June 2013 and the district court erred in stating the Trust's remedy was to cancel the contract for deed earlier. The Trust argues there are factual disputes on its alternative claims for rescission, or for damages for breach of contract.

### A

[¶ 15] The parties' consent to a contract is not free if obtained through fraud. N.D.C.C. §§ 9–03–01 and 9–03–03(3); *American Bank Ctr. v. Wiest,* 2010 ND 251, ¶ 10, 793 N.W.2d 172; *Erickson v. Erickson,* 2010 ND 86, ¶ 7, 782 N.W.2d 346. A party who has been induced to enter a contract by fraudulent misrepresentations may elect to rescind the contract, or to affirm the contract and recover damages. *Barker v. Ness,* 1998 ND 223, ¶ 8, 587 N.W.2d 183; *Delzer v. United Bank,* 527 N.W.2d 650, 653 (N.D.1995).

[¶ 16] In determining whether consent to a contract was obtained by fraud, "actual fraud" means acts intended to deceive another party or to induce the other party to enter into the contract, including the suggestion as a fact of that which is not true by one who does not believe it to be true, the suppression of that which is true by one having knowledge or belief of the fact, a promise made without any intention of performing it, or any other act fitted to deceive. N.D.C.C. § 9–03–08. "Actual fraud is always a question of fact." N.D.C.C. § 9–03–10. Claims about fraudulent inducement, misrepresentations, and the parties' intentions

generally involve factual questions that are inappropriate for summary judgment. *See Golden Eye Res., LLC v. Ganske*, 2014 ND 179, ¶ 26, 853 N.W.2d 544; *Erickson v. Brown*, 2008 ND 57, ¶ 26, 747 N.W.2d 34; *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 25, 730 N.W.2d 841.

[¶ 17] Here, we need not decide if, viewing the evidence in the light most favorable to the Trust, there are disputed issues of material fact about the Trust's claims for rescission or damages for breach of contract involving allegations of fraudulent misrepresentations. Rather, assuming there was fraud by Holverson, we conclude the Trust's fraud claims are barred by the statute of limitations, which Holverson pled as an affirmative defense in the reply to the Trust's counterclaims. Although the district court did not decide the fraud claims under the statute of limitations, we have often said we will not set aside a correct result merely because the court may have applied incorrect reasoning if the result is the same under the correct law and reasoning. *E.g., Investors Title Ins. Co. v. Herzig*, 2010 ND 169, ¶ 40, 788 N.W.2d 312.

## B

[¶ 18] Under N.D.C.C. § 28–01–16(6), we have said a claim for fraud must be commenced within six years after the claim has accrued, and the claim does not accrue until discovery of the facts constituting the fraud. *See Podrygula v. Bray*, 2014 ND 226, ¶ 13, 856 N.W.2d 791; *Rose v. United Equitable Ins. Co.*, 2001 ND 154, ¶ 9, 632 N.W.2d 429; *Jones*, 2000 ND 207, ¶¶ 7–8, 619 N.W.2d 490; *Kuntz v. Muehler*, 1999 ND 215, ¶ 6, 603 N.W.2d 43; *Bjorgen v. Kinsey*, 466 N.W.2d 553, 558 (N.D.1991); *Phoenix Assurance Co. v. Runck*, 366 N.W.2d 788, 791 (N.D.1985). The statute of limitations generally begins to run from the commission of the wrong-

ful act giving rise to the cause of action; however, that rule is subject to a discovery rule. *Podrygula*, at ¶ 14; *Wells v. First Am. Bank West*, 1999 ND 170, ¶ 9, 598 N.W.2d 834. In *Wells*, at ¶ 10 (citations omitted), we discussed the application of the discovery rule to contract actions:

> The discovery rule postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury.... We have used an objective standard for the knowledge requirement under the discovery rule. The focus is upon whether the plaintiff is aware of facts that would place a reasonable person on notice a potential claim exists, without regard to the plaintiff's subjective beliefs.

[¶ 19] Under N.D.C.C. § 28–01–16, we have interpreted the discovery rule to mean that notice of facts putting a person of ordinary intelligence on inquiry is equivalent to knowledge of all the facts a reasonably diligent inquiry would disclose. *Podrygula*, 2014 ND 226, ¶ 15, 856 N.W.2d 791; *Jones*, 2000 ND 207, ¶ 8, 619 N.W.2d 490. We explained that interpretation is consistent with the belief that, after acquiring knowledge of facts sufficient to put a person of ordinary intelligence on inquiry, a party has a responsibility to promptly find out what legal rights result from those facts, and failure to do so will be construed against the party. *Podrygula*, at ¶ 15; *Jones*, at ¶ 8. The discovery rule does not require full knowledge of the extent of an injury; rather, it only requires the party be aware of an injury. *Podrygula*, at ¶ 15.

[¶ 20] This Court has acknowledged a senior encumbrancer is not necessarily deemed to have constructive notice of subsequent encumbrances. *First Nat. Bank v. Big Bend Land Co.*, 38 N.D. 33, 37, 164 N.W. 322 (1917); *Sarles v. McGee*, 1 N.D. 365, 368, 48 N.W. 231, 232 (1891).

*See* N.D.C.C. § 35–03–07 ("record of a mortgage duly made operates as notice to all subsequent purchasers and encumbrancers"). Under N.D.C.C. § 47–19–19, however, the "record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons." Consistent with that statutory provision, we have said a person dealing with real property is charged with constructive notice of properly recorded instruments affecting title to the property. *Vanderhoof v. Gravel Products, Inc.*, 404 N.W.2d 485, 488–91 (N.D.1987); *Burlington N., Inc. v. Hall*, 322 N.W.2d 233, 238 (N.D.1982); *Schulz v. Hauck*, 312 N.W.2d 360, 361 (N.D.1981); *Northwestern Mut. Sav. & Loan Ass'n v. Hanson*, 72 N.D. 629, 635, 10 N.W.2d 599, 602 (1943). Under those authorities and N.D.C.C. § 47–19–19, when a person engages in transactions involving real property, the person is charged with constructive notice of properly recorded instruments affecting title to the real property.

[¶ 21] When Susan Lundberg amended the Trust's contract for deed and mortgage on November 10, 1997, she engaged in a transaction involving title to the real property and was charged as a matter of law with constructive notice of the record in the office of the county recorder at that time, which included the November 1997 mortgage to Capital Credit Union and five other mortgages and three satisfactions executed by Holverson between 1978 and November 7, 1997. At that time, Susan Lundberg, as Trustee, was as a matter of law charged with knowledge of all of the facts a reasonably diligent inquiry would disclose, including the instruments of record in the recorder's office, and had a responsibility to ascertain the Trust's legal rights resulting from that knowledge. *See Podrygula*, 2014 ND 226, ¶ 15, 856 N.W.2d 791; *Jones*, 2000 ND 207, ¶ 8, 619 N.W.2d 490. Although Holverson may have continued to make sporadic payments to the Trust and to record additional mortgages and satisfactions on the property after November 10, 1997, the Trust, through Susan Lundberg, is deemed to have constructive notice of the record in the recorder's office on November 10, 1997. We conclude the statute of limitations for the Trust's counterclaims for rescission and damages for breach of contract involving alleged fraudulent misrepresentations began to run no later than November 1997, and the Trust did not pursue those counterclaims until 2013. We therefore conclude the Trust's counterclaims for rescission and damages for breach of contract involving alleged fraudulent misrepresentations are barred by the statute of limitations.

## C

[¶ 22] The Trust also argues summary judgment dismissing its claim for damages was inappropriate because there was evidence Holverson misled Susan Lundberg in amending the contract for deed and waiving any breaches of the contract.

[¶ 23] Waiver is a voluntary and intentional relinquishment of a known right or privilege and is ordinarily a question of fact. *In re Peterson's Dogs*, 2008 ND 225, ¶ 8, 758 N.W.2d 749. To the extent the Trust's waiver argument is premised on a claimed fraudulent inducement, the Trust's claim is barred by the statute of limitations. To the extent the Trust's waiver argument is separate from the fraudulent inducement claim, we conclude summary judgment was appropriate because reasonable minds could only conclude the Trust's acceptance of sporadic payments for more than 30 years waived the clause in the contract for deed making time of the essence. As a matter of law,

the Trust waived compliance with that contractual requirement.

## IV

[¶ 24] We affirm the summary judgment.

[¶ 25] BENNY A. GRAFF, S.J., DALE V. SANDSTROM, LISA FAIR McEVERS and DANIEL J. CROTHERS, JJ., concur.

[¶ 26] The Honorable BENNY A. GRAFF, S.J., sitting in place of KAPSNER, J., disqualified.

CROTHERS, Justice, concurring specially.

[¶ 27] Based on the record in this case, I agree with the result and the rationale underpinning the majority opinion. I again write separately about the distinction between fraud and deceit, here discussing the impact on claims asserted in the Trust's counterclaims.

[¶ 28] "A party who has been induced to enter a contract by fraudulent misrepresentations may elect to rescind the contract, or to affirm the contract and recover damages." Majority opinion, ¶ 15. This holding is consistent with the difference between fraud and deceit:

> "Both fraud and deceit claims are provided for by statute. Fraud is part of the chapter on consent to contractual obligations. *See* N.D.C.C. ch. 9–03. Deceit is part of the chapter on obligations imposed by law. *See* N.D.C.C. ch. 9–10. My persistent writings on the distinction between fraud and deceit are more than academic discussions because the claims have similar but different proof requirements and result in different remedies. *Erickson*, 2008 ND 57, ¶¶ 59–93, 747 N.W.2d 34 (Crothers, J., concurring in part and dissenting in part)."

*Podrygula v. Bray*, 2014 ND 226, ¶ 30, 856 N.W.2d 791 (Crothers, J., specially concurring).

[¶ 29] Here, the Trust counterclaimed for rescission of the contract for deed and recovery of damages. The Trust clearly sought alternative remedies. In paragraphs 24 through 30 of the Counterclaim the Trust asserts what it labeled a fraud claim, expressly relying on N.D.C.C. § 9–03–08. The Trust alleged "Defendant relied to her detriment on the misleading statements, omissions, and actions of Plaintiff that led her to forgo rescinding the contract for deed and deprived her of the ability to make several other educational loans to college students and receive the accrued interest on these loans." This allegation is inconsistent with a fraud claim because rescission of the contract is the remedy that avoids the transaction and puts the parties back into their pre-contracting positions to the extent possible. *See Erickson v. Brown*, 2008 ND 57, ¶ 66, 747 N.W.2d 34 ("Overt affirmation of the contract, failure to seasonably restore to the other party everything of value, or conduct inconsistent with rescission is an election to ratify the contract. N.D.C.C. §§ 9–03–24 and 9–03–25."). "Upon ratification, the opportunity to avoid the contract is waived, an action for fraud is no longer available, and a beguiled party seeking redress must proceed in tort to recover for deceit." *Id.*

[¶ 30] Here, proving fraud would permit the Trust to rescind the contract for deed; it would not excuse one from "forgo[ing] rescinding the contract for deed." That is more in the nature of an estoppel claim. *See Erickson*, 2008 ND 57, ¶ 35, 747 N.W.2d 34.

[¶ 31] The Trust also alleged fraud when "Defendant reasonably relied on Plaintiff's misleading actions and represen-

tations in deciding to amend the contract for deed and mortgage agreement, instead of rescinding it in 1997." Again, the deception or misrepresentation sued on as fraud provides for the remedy of rescission. *Erickson*, 2008 ND 57, ¶ 62, 747 N.W.2d 34. The Trust's failure to pursue a fraud claim can be one of several things: (1) the loss of the claim under the statute of limitations due to passage of time; (2) the affirmance of the contract, waiver of the fraud and an election to sue in deceit for money damages; or (3) a claim of estoppel. But it is not a fraud claim.

[¶ 32] Notwithstanding inconsistencies within the Trust's pleading, the district court and the majority opinion treats the Trust's fraud counterclaim as an effort to rescind the contract for deed, which would make it a nullity. I agree with that approach and conclusion.

[¶ 33] The Trust's second counterclaim alleges breach of contract. There, the Trust alleged, "In the event that this Court determines not to rescind the contract for deed, by reason of Plaintiff's fraud and misrepresentation, Defendant has been damaged in the amount to be determined at trial but at least $100,000 and in such further amounts as may be proven at trial."

[¶ 34] This request for alternative relief clearly seeks recovery of damages for breach of contract if the contract is not rescinded due to fraud. To prevail on the damage claim, the Trust must affirm its consent to the contract, waive the fraud and sue for damages. *Id.* at ¶ 62. From the counterclaim and briefing, it appears the Trust altogether waived its potential deceit claims relating to the misrepresentation and only sought damages related to Holverson's breach of the contract for deed. But the counterclaim is not entirely clear on this question.

[¶ 35] The Trust argued in its brief opposing summary judgment that Holverson should not prevail, stating:

"This opposition is based on the fact that there are triable issues of fact regarding: (1) whether Plaintiff's actions constitute fraud under NDCC 9–03–08 (such that a reasonable trustee would not have discovered or have reason to discover) and, as a result, render specific performance unenforceable against Defendant, and, instead, entitle Defendant to rescission of the contract; and (2) in the alternative, whether Plaintiff's admitted default in payments entitle Defendant to damages equal to the current value of the land; the unpaid balance remaining in March 1988 and interest accrued on the unpaid balance; or the unpaid balance remaining in November 1997 and the interest accrued on the unpaid balance."

[¶ 36] This briefing clarifies that the Trust asserts Holverson's fraud allows for rescission of the contract for deed. The briefing also confirms that, if the contract is not rescinded, the Trust seeks damages for Holverson's breach of the contract. A serious legal question exists whether such damages are recoverable by a contract for deed vendor against the vendee. *See Langenes v. Bullinger*, 328 N.W.2d 241, 246 (N.D.1982) and *In re Faiman*, 70 B.R. 74, (Bankr.D.N.D.1987) (damages normally recoverable in breach of contact action are not recoverable on a contract for deed cancellation due to anti-deficiency laws in N.D.C.C. ch. 32–19).

[¶ 37] As it pertains to this writing, the Trust has not asserted a deceit claim; rather it seeks money damages for Holverson's breach of the contract. It is because of the posture of the pleadings in this case that I agree with the majority opinion. In the context of the counterclaims, the majority correctly holds that "[a] party who

has been induced to enter a contract by fraudulent misrepresentations may elect to rescind the contract, or to affirm the contract and recover damages." Majority opinion, ¶ 15. In the fraud counterclaim, as explained in its briefing, the Trust seeks rescission of the contract for deed due to fraud, or damages if the contract is not rescinded. This is legally correct because, if the contract is rescinded due to the fraud, no agreement exists and the issue of breach and damages goes away. But if the contract is affirmed by consent obtained after the fraud was discovered, damages may be sought for deceit and for the ultimate breach of contract (the later subject to limitation of remedies for breaches of contracts for deed, as explained above).

[¶ 38] Here, the Trust did not sue to recover damages for deceit. It sued to rescind for fraud and, only if the contract for deed was not rescinded, it alternatively sought damages for breach of the contract for deed. By my reading of the complaint and the Trust's filings on summary judgment, it did not sue for damage arising out of the underlying misrepresentation (deceit) connected to the Trust staying in the deal and I do not believe the majority opinion should be read to suggest otherwise.

[¶ 39] DANIEL J. CROTHERS