# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 63

Bullinger Enterprises, LLLP,                                  Plaintiff and Appellant

      v.

Howard Dahl, Brian Dahl, and

Thor Iverson,                                                  Defendants and Appellees

## No. 20190241

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Susan L. Bailey, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Michael L. Gust (argued) and Matthew D. Kirschenmann (on brief), Fargo, ND, for plaintiff and appellant.

Benjamin J. Hasbrouck (argued) and Aubrey J. Fiebelkorn-Zuger (on brief), Fargo, ND, for defendants and appellees.

**Bullinger Enterprises v. Dahl**
**No. 20190241**

**Jensen, Chief Justice.**

[¶1]   Bullinger Enterprises, LLLP (Bullinger Enterprises) appeals from the district court's judgment dismissing Bullinger Enterprises' claims against Howard Dahl, Brian Dahl, and Thor Iverson (collectively, the Dahls). Bullinger Enterprises argues the district court erred in concluding its claims accrued no later than the end of March 2012 and, as a result, the claims are barred by the statute of limitations.  We affirm the district court's judgment.

I

[¶2]   Bullinger Enterprises is owned by Michael Bullinger. In 2001, Bullinger Enterprises, Howard Dahl and Brian Dahl each acquired separate interests in the agricultural equipment manufacturing company Wil-Rich.  Howard Dahl and Brian Dahl each owned a 25% interest in Wil-Rich and Bullinger Enterprises owned a 45% interest.  The remaining 5% was owned by Wil-Rich's General Manager.

[¶3]   The Dahls also owned Amity Technology, LLC (Amity).   Amity manufactured sugar beet harvesters and air drill seeders.  During 2010, Howard Dahl was seeking an equity investor to help Amity sell air drill seeders, a new product that had not yet achieved significant sales.  Because of the common ownership and operational interactions between Amity and Wil-Rich, Howard Dahl asked Michael Bullinger if he would be interested in having Wil-Rich included in a potential deal.  Michael Bullinger agreed to Wil-Rich being included in Amity's search for an equity investor.  Howard Dahl and Thor Iverson later began negotiations with a potential investor, AGCO Corporation (AGCO).

[¶4]   In October 2010, Thor Iverson emailed Mike Bullinger a summary of the negotiations he had with AGCO.  Thor Iverson explained that when the negotiations began with AGCO, Howard Dahl had proposed a sale to AGCO totaling $100 million, with $20 million of the sale price allocated to Amity's sugar beet business, $60 million allocated to Amity's air drill seeder business,

1

and $20 million allocated to Wil-Rich. Thor Iverson's email continued by noting AGCO responded it could only complete a $60 million deal, so "[w]e reduced the value of the air drill seeding business to $40 million, leaving the Wil-Rich value at $20 million, for a $60 million enterprise value." AGCO and Amity agreed to proceed with a joint venture by purchasing a 50% interest in Wil-Rich and the air drill seeder business.

[¶5] To facilitate Amity's joint venture with AGCO, in January 2010, ownership of Wil-Rich was transferred to Amity. The transfer of ownership of Wil-Rich to Amity was accomplished through an exchange of shares with the owners of Wil-Rich exchanging their ownership interests for an ownership interest in Amity. The value of Wil-Rich and Amity were set according to the values used in the discussions leading up to the sale to AGCO. Following the exchange of ownership, Amity entirely owned Wil-Rich and the prior owners of Wil-Rich owned an interest in Amity. Amity transferred its air drill seeder business to Wil-Rich. The joint venture between Amity and AGCO moved forward with Amity selling 50% of the Wil-Rich stock to AGCO for $30 million. Wil-Rich was then renamed AGCO-Amity JV, LLC, a joint venture owned by Amity and AGCO.

[¶6] By January 2012, Michael Bullinger became concerned about the AGCO-Amity JV, LCC operations, specifically that the air drill seeder sales were under performing while the Wil-Rich related sales were over performing. Michael Bullinger emailed Thor Iverson stating he believed the air drill seeder's Pro Forma Financial Statement, compiled as part of the formation of the AGCO-Amity joint venture, appeared to be grossly overstated, while noting Thor Iverson had presented it as a conservative valuation at the time the joint venture was being formed. In February 2012, Michael Bullinger requested Thor Iverson provide him copies of the communications between Amity and AGCO leading up to the joint venture.

[¶7] After Michael Bullinger received the documentation of the communications leading up to the joint venture, the parties discussed the valuations used for the joint venture. Howard Dahl emailed Mike Bullinger in March 2012 to explain his recollection of the transaction. In the email, Howard

2

Dahl noted the following with regard to how Wil-Rich was valued: "You expressed $20 million plus keeping the building" and "it was with this number that we proceeded."

[¶8] In July 2018, Bullinger Enterprises commenced this action alleging claims of breach of fiduciary duties and deceit. All the claims arise from Bullinger Enterprises' allegation that the Dahls misrepresented to him that AGCO set the value of Wil-Rich at $20 million and AGCO was not willing to value Wil-Rich any higher. Bullinger Enterprises asserts the misrepresentations led to a misallocation of the ownership of Amity following the exchange of the ownership of Wil-Rich for ownership in Amity.

[¶9] The Dahls moved for summary judgment, arguing the statute of limitations barred Bullinger Enterprises' claims. The district court determined Bullinger Enterprises commenced the action in July 2018 and Bullinger Enterprises knew, or with the exercise of reasonable diligence should have known, of its claims and the resulting injury as early as January 2012, but no later than the middle of March 2012. Applying the six year statute of limitations under N.D.C.C. § 28-01-16(6), the court granted summary judgment for the Dahls and dismissed the action with prejudice.

[¶10] The district court identified three events it determined to have placed Bullinger Enterprises on notice of its potential claims. First, in January 2012, Mike Bullinger emailed Thor Iverson and complained about what he believed to be inaccurate financial information used to value the air drill seeder business. Second, in February 2012, Mike Bullinger requested information regarding the discussions between Amity and AGCO leading up to the joint venture. Third, in an email dated March 14, 2012, following Mike Bullinger's receipt of the information he had requested, Mike Bullinger received the Dahls' explanation of the valuation discussions before the joint venture. The March 14, 2012 email included an assertion that Mike Bullinger had agreed to value Wil-Rich at $20 million, plus keep the building, and the Dahls proceeded to secure the joint venture based on Mike Bullinger's agreement with the $20 million value for Wil-Rich.

3

[¶11] Bullinger Enterprises argues the district court erred in granting summary judgment for the Dahls after concluding the statute of limitations barred the claims. This Court's standard of review for summary judgment is well established:

> Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

*Broten v. Carter*, 2019 ND 268, ¶ 7, 935 N.W.2d 654 (quoting *Pettinger v. Carroll*, 2018 ND 140, ¶ 7, 912 N.W.2d 305).

[¶12] Subsection (6) of the six year statute of limitations under N.D.C.C. § 28-01-16 governs fraud and deceit actions. *Bjorgen v. Kinsey*, 466 N.W.2d 553, 558 (N.D. 1991). An action under Section 28-01-16(6) must be commenced within six years after the claim has accrued. *Id.*; N.D.C.C. § 28-01-16(6). The parties agree the six year statute of limitations under N.D.C.C. § 28-01-16(6) applies to Bullinger Enterprises' claims in this action.

[¶13] A claim is deemed to have accrued upon discovery by the aggrieved party of the facts constituting the fraud or deceit. N.D.C.C. § 28-01-16(6). "The discovery rule postpones a claim's accrual until the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury. . . . We have used an objective standard for the knowledge requirement under the discovery rule." *Klein v. Sletto*, 2017 ND 26, ¶ 16, 889 N.W.2d 918 (quoting *Rose v. United Equitable Ins. Co.*, 2001 ND 154, ¶ 9, 632 N.W.2d 429). "The focus is upon whether the plaintiff is aware of facts that would place a reasonable person on notice a potential claim exists, without regard to the plaintiff's subjective beliefs." *Id.*

[¶14] "[N]otice of facts, which would put a person of ordinary intelligence on inquiry, is equivalent to knowledge of all of the facts a reasonable diligent inquiry would disclose." *Larson v. Midland Hosp. Supply, Inc.*, 2016 ND 214, ¶ 11, 891 N.W.2d 364 (quoting *Jones v. Barnett*, 2000 ND 207, ¶ 8, 619 N.W.2d 490). "[A]fter acquiring knowledge of the facts, a party has a responsibility to promptly find out what legal rights result from those facts, and failure to do so will be construed against the party." *Id.* "The determination of when a plaintiff's cause of action has accrued is generally a question of fact, but if there is no dispute about the relevant facts, the determination is for the court." *Id.* (quoting *Dunford v. Tryhus*, 2009 ND 212, ¶ 6, 776 N.W.2d 539).

[¶15] The relevant facts are not in dispute. In January 2012, Mike Bullinger became skeptical about the transaction and he expressed his belief to Thor Iverson that the pro forma financial statement used by the parties to value the air drill seeder business appeared to be overstated. In February 2012, Mike Bullinger requested Thor Iverson provide him copies of the communications between Amity and AGCO leading up to the joint venture. Howard Dahl's March 14, 2012 email to Mike Bullinger provides the Dahls' version of the events and summarizes their assertion Mike Bullinger agreed to value Wil-Rich at $20 million and the deal progressed with that agreement. The district court identified the performance of the air drill seeder business in contradiction to the financial estimates provided by the Dahls, Mike Bullinger's request and review of the discussions between Amity and AGCO leading up to the joint venture, and the receipt of Howard Dahl's March 14, 2012 email as sufficient

5

notice of facts that would cause a reasonable person to exercise reasonable diligence to discover the potential claims. We conclude the court did not err in concluding that Bullinger Enterprises had been placed on notice of its claims no later than March 14, 2012, and Bullinger Enterprises' assertion of the claims in July 2018 was outside the six year statute of limitations.

## III

[¶16] Bullinger Enterprises contends that because of the fiduciary relationship between the parties, the emails exchanged by the parties, and the documentation of the communications between the Dahls and AGCO did not require him to inquire about who valued Wil-Rich. This Court has previously recognized a fiduciary relationship does not affect the statute of limitations when the evidence establishes the plaintiff failed to inquire into the inconsistent nature of the defendant's statements. *Larson v. Midland Hosp. Supply, Inc.*, 2016 ND 214, ¶ 17, 891 N.W.2d 364. Howard Dahl's statements in the March 14, 2012 email contained assertions inconsistent with Bullinger Enterprises' assertion of who valued Wil-Rich. A reasonable diligent inquiry into Howard Dahl's statements would have disclosed the potential claims. Even if a fiduciary relationship existed between the parties, the district court did not err in granting summary judgment for the Dahls after concluding Bullinger Enterprises initiated its action after the statute of limitations had expired.

## IV

[¶17] The district court did not err in concluding Bullinger Enterprises was placed on notice of its potential claims no later than March 14, 2012, and the

assertion of a cause of action in July 2018 was outside the six year statute of limitations. The district court's judgment is affirmed.

[¶18] Jon J. Jensen, C.J.
      Jerod E. Tufte
      Daniel J. Crothers
      Lisa Fair McEvers
      Gerald W. VandeWalle